**Craig Ryan CARTER, by next friend, Jan CARTER, Petitioner–Appellant,**

v.

**Steven J. MORROW, Defendant–Appellee.**

**No. 72A01–9006–CV–242.**

Court of Appeals of Indiana, First District.

Dec. 13, 1990.

---

**2.** The entry was made on May 11, 1988, and the letter was mailed on May 12, 1988.

Kenneth A. Layton and Jeffrey A. Lewellyn, Montgomery, Elsner & Pardieck, Seymour, for petitioner-appellant.

James W. Holland, Columbus, for defendant-appellee.

BAKER, Judge.

Petitioner-appellant Jan Carter gave birth to a son, C.R., on June 21, 1983. She filed an action against respondent-appellee Steven Morrow on August 16, 1989 to establish paternity and set child support. The parties stipulated paternity and the trial court entered a child support order, which it modified in part upon Carter's motion to correct error. Carter now ap-

peals Judge James Kleopfer's partial denial of her motion to correct error, raising the following restated issues for our review:

I. Whether the trial court properly followed the Indiana Child Support Guidelines (the Guidelines).

II. Whether the trial court erred in not granting Carter's request for back child support.

## FACTS

Carter and Morrow lived together for approximately two years in the early 1980s. Morrow told Carter to move out soon after Carter became pregnant with C.R., had no further relationship with Carter, and paid no support for C.R.

On August 16, 1989, Carter filed her action requesting future and back child support, medical expenses, employment related child care expenses, and private elementary school tuition expenses. The parties presented evidence of their incomes and obligations, including child support obligation worksheets, and the trial court entered its judgment on March 5, 1990. The trial court applied the formulas in the Guidelines to reach a support figure of $94.00 per week commencing retroactively on February 16, 1990, and also ordered an arrearage of $25.00 per week for the time between the filing of the action and February 16, 1990. Judge Kleopfer also awarded Carter birthing costs, one half of the costs for the blood tests which established paternity, attorney fees, and required Morrow to maintain medical insurance for C.R. and to pay 65 per cent of all C.R.'s uninsured medical expenses. The court did not allow two years of back support as requested by Carter, or recovery of the child care and educational expenses. Finally, the trial court refused to consider Morrow's overtime income as part of his weekly gross income because of the uncertainty of future overtime income.

On Carter's motion to correct error, the trial court modified its arrearage award by applying the Guidelines to increase the arrearage from $25.00 per week to $94.00 per week, but otherwise did not modify its original order.

## DISCUSSION AND DECISION

## I THE INDIANA CHILD SUPPORT GUIDELINES

The Indiana Supreme Court adopted the Indiana Child Support Rules and Guidelines for "use in all Indiana courts in all proceedings where child support is established or modified on and after October 1, 1989." Commentary, Ind. Child Support Guideline 1. A child support order for the amount yielded by application of the Guidelines in any specific case is supported by a rebuttable presumption of correctness. Ind. Child Support Rule 2. If application of the Guidelines would result in an unjust award, the trial court is required to "enter a written finding articulating the factual circumstances supporting that conclusion." Ind. Child Support Rule 3. Because child support in this case was established by the trial court's March 5, 1990 order, the Guidelines were in effect, and we turn now to Carter's arguments to determine whether the trial court properly applied the Guidelines in accordance with the Rules.

### A. Overtime Wages

■■■■ Carter first argues the trial court erred by not including Morrow's overtime income as part of his weekly gross income under Ind. Child Support Guideline 3(A).

> Weekly gross income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, gifts, prizes, and alimony or maintenance received from other marriages.

Child Supp. G. 3(A)(1). While the word "overtime" is not specifically listed, the broad and inclusive nature of the sources of weekly gross income, coupled with the common sense notion that "wages" means base pay and overtime pay, leads us to the conclusion that overtime is indeed an element of weekly gross income. Judge Kle-

opfer reached the same conclusion, but determined not to include Morrow's overtime because of the uncertainty of future overtime income. In making this determination, he complied exactly with the requirement of Child Supp. R. 3 that trial courts articulate their reasons for deviating from the Guidelines. This is all the Guidelines require.[1]

Because Judge Kleopfer properly articulated his reasons for deviating from the Guidelines, our standard of review remains the same as it has always been; we will reverse only for an abuse of discretion. *In re Paternity of Bratcher* (1990), Ind.App., 551 N.E.2d 1160. The record reveals Morrow works for the automotive industry and suffers the periodic downturns that industry experiences. In this situation, we see no abuse of discretion in excluding Morrow's overtime income from the calculation of weekly gross income.

### B. Extraordinary Educational Expenses

■ Carter next argues the Guidelines required the trial court either to include expenses for private elementary education in the support order or to articulate the reasons for not doing so. We disagree. IND. CODE 31-1-11.5-12(b)(1) provides that child support awards *may* include extraordinary educational expenses *where appropriate.* The determination whether to allow such expenses in a particular case is a matter for the trial court's discretion. *Olds v. Olds* (1988), Ind.App., 531 N.E.2d 1219. The Guidelines reaffirm that educational expenses are discretionary: "[a]ny extraordinary education expense incurred on behalf of the children *may* be added to the basic child support obligation." Child Supp. G. 3(E)(3) (emphasis added). Unlike the inclusion of overtime in support awards, the inclusion of educational expenses is discretionary, and no reasonable purpose would be furthered by reading Child Supp. R. 3 to require trial courts to

explain why they did not do that which they are not required to do.

Moreover, the decision to send a child to a private school is an intensely individual one. Carter presented no evidence C.R. had any special educational needs, gifts, or handicaps. She merely stated she had enrolled him in a private school with annual tuition costs of $650. While we do not fault Carter for sending her son to a private school, neither can we say the trial court abused its discretion in refusing to increase the child support award to reflect C.R.'s extraordinary educational expenses.

### C. Employment Related Child Care Expenses

A similar analysis applies to the exclusion of Carter's employment related child care costs. "Child care costs incurred due to employment or job search of either parent, *should* be added to the basic obligation." Child Supp. G.3(E)(1) (emphasis added). The reason trial courts are to consider employment related child care expenses is that, depending on individual circumstances, custodial parents may find it economically impracticable to work if child care costs are not shared. Commentary, Child Supp. G. 3(E). That custodial parents should be able to afford to work is, of course, an important public policy goal. The language of Child Supp. G. 3(E)(1), however, is clear. While the word "should" is more persuasive than the word "may," and emphasizes to trial courts the importance of considering employment related child care expenses, it is nonetheless not a mandatory word. Whether to increase a basic child support award to offset employment related child care expenses is a matter for the trial court's discretion, and a decision not to allow such an increase does not require a written finding of explanation under Child Supp. R. 3.

■ It follows, then, that the trial court's decision not to increase the basic

---

1. The trial court's decision states "[i]n setting the amount of child support the Court did not use the respondent's overtime because of its uncertainty." *Record* at 27. This statement sufficiently articulated the trial court's reason for its decision. The Commentary to Guideline 1 states that the reasons for departing from the Guidelines "need not be as formal as Findings of Fact and Conclusions of Law; they need only articulate the judge's reasoning."

child support award for employment related child care expenses is reviewable only for an abuse of discretion. *Paternity of Bratcher, supra.* Absent an abuse of discretion, we cannot substitute our judgment for that of the trial court. *Farmer v. Minor* (1986), Ind.App., 495 N.E.2d 553, *trans. denied.* Carter testified she incurred $30.00 in weekly child care expenses from 1987 through August of 1989. While $30.00 is not an excessive sum, Carter presented no evidence regarding the services she received for her money. Moreover, it is uncontroverted the expenses ceased when C.R. began school. Judge Kleopfer did not abuse his discretion in refusing to compensate Carter for the child care costs.

## II BACK SUPPORT

■ We come now to the issue of back support. Carter argues the trial court erred in not awarding her the two years of back child support she requested because the Guidelines mandate such an award. This argument reflects a mistaken view of the effect of the Guidelines.

The statute controlling back support is IND. CODE 31–6–6.1–13(g), which provides: "the support order must include the period dating from: (1) the birth of the child; or (2) the filing of the paternity action, whichever event occurs later." In a recent decision, we held this statute did not repeal the Indiana common law allowing trial courts to order back support for a period up to two years prior to the filing of the paternity action. *Matter of Paternity of R.B.T.* (1990), Ind.App., 550 N.E.2d 769; *see also Paternity of Bratcher, supra; Farmer, supra.* It does not follow, however, that trial courts are required to award back support beyond that mandated by the statute. Instead, IND. CODE 31–6–6.1–13(g) provides a minimum amount of back support which must be awarded, regardless of whether the petitioner requests back support. *Paternity of Bratcher, supra.*

The Guidelines do not supersede the statute; they are to be construed in light of the statute and our common law. Under the law, trial courts must order back support from the later of the time of the child's birth or the filing of the paternity action, and they have full discretion whether to order additional back support. That Judge Kleopfer decided not to award back support beyond the time of filing in this case is not a matter for us to second guess.

■ The record does reveal a scrivener's error, however. As we have already discussed, IND. CODE 31–6–6.1–13(g) mandates back support be ordered from the later of the time the child was born or the petition to establish paternity was filed. Because C.R. was six years old when Carter filed the action, Carter is entitled to an award dating from the date of the filing.

Carter originally filed her petition in Jackson County on August 16, 1989. After change of venue was granted, the petition was filed in Scott County on September 8, 1989. Judge Kleopfer ordered back support from the date the petition was venued to Scott County. The date of the original filing controls, however, and we must therefore remand.

### CONCLUSION

The cause is remanded for amendment of the order on Carter's motion to correct error to reflect an additional arrearage of $94.00 per week dating from August 16, 1989. In all other respects, the judgment of the trial court is affirmed.

RATLIFF, C.J., and STATON, J., concur.