**In the Marriage of Richard KYLE, Appellant–Petitioner,**

v.

**Elizabeth KYLE, Appellee–Respondent.**

**No. 48A02–9105–CV–221.[1]**

Court of Appeals of Indiana, First District.

Dec. 16, 1991.

Rehearing Denied Jan. 13, 1992.

---

1. This case was reassigned to this office by order of the Chief Judge.

David W. Stone IV, Stone Law Office & Legal Research, Ronald L. McNabney, Anderson, for appellant-petitioner.

John L. Davis, Karin L. Hull, Greenfield, for appellee-respondent.

ROBERTSON, Judge.

Richard Kyle appeals the trial court's modification (increase) of his child support obligation for his two children born of his marriage to Elizabeth Kyle. Richard raises five (5) issues (which we restate and expand into six (6)), none of which constitutes reversible error.

## FACTS

The facts in the light most favorable to the trial court's judgment indicate that Richard and Elizabeth are the parents of two children, Heidi (born July 24, 1974), and Adam (born January 28, 1977). Richard and Elizabeth were divorced on July 25, 1989. Richard was awarded custody of Heidi and Elizabeth was awarded custody of Adam. Richard was ordered to pay $45.00 per week in child support for Adam. Richard was to be responsible for 70%, and Elizabeth 30%, of any uninsured medical, dental, and optical expenses. Richard was awarded the marital residence and was ordered to pay Elizabeth $3,500.00 at the rate of $100.00 per month for her share of the equity in the house.

In August of 1990, the parents agreed that Heidi would live with Elizabeth. Accordingly, the present petition for modification was filed in August of 1990 to effect this new arrangement. Heidi went to live with her mother on October 1, 1990.

Adam is deaf and autistic. At the time of the hearing in this matter, Elizabeth was receiving Supplemental Security Income in the amount of $177.25 per month on Adam's behalf. In January of 1991, this amount was scheduled to increase to $202.25 per month. Adam is a resident day student at the Indiana Deaf School from Sunday evening until Friday afternoon each week during the school year. There is no charge for tuition or room and board at the deaf school. Elizabeth is reimbursed

at $.25 per mile for driving Adam to and from the deaf school.

Elizabeth's fiance is living with her. He shares in the expenses of the household by paying one-half of the rent and utilities. Richard has remarried.

On March 13, 1991, the trial court entered its decision modifying the custodial arrangement and child support orders. The trial court modified Richard's child support obligation by ordering him to pay $141.00 per week on behalf of the two children, the amount indicated by the Indiana Child Support Guidelines. The trial court did not modify the order pertaining to uninsured medical expenses and ordered them to be allocated, as before, 70% to Richard and 30% to Elizabeth. The trial court ordered that Richard pay 73% (Richard's percentage share of the parties' total available income) of Elizabeth's work-related child care expenses for Adam's care during the summer months when he is not enrolled in the deaf school.

On April 12, 1991, Richard filed the praecipe. On April, 30, 1991, Elizabeth filed a petition for contempt to enforce the present orders. Richard petitioned our court for a stay of execution during the pendency of this appeal. Elizabeth petitioned the trial court for appellate attorney's fees to defend the present appeal. We granted Richard's petition for a stay of execution on the condition that he post a $10,000.00 bond. The trial court held a hearing on Elizabeth's petition for appellate attorney's fees (which neither Richard nor his attorney attended) and determined that Richard should pay Elizabeth's appellate attorney's fees. The trial court provided that the reasonable attorney's fee to be assessed against Richard would be determined at the completion of the appellate process. However, the trial court ordered Richard to pay Elizabeth's attorney an initial sum of $2,000.00 when the appellee's brief was filed.

## DECISION

### I.

Whether the trial court abused its discretion by not deviating from the child support guidelines in setting Richard's child support obligation?

Indiana Code 31–1–11.5–12(a) provides that the trial court must consider all relevant factors in setting an amount of child support including:

(1) the financial resources of the custodial parent;

(2) the standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

(3) the physical or mental condition of the child and the child's educational needs; and

(4) the financial resources and needs of the noncustodial parent.

(b) The child support order may also include, where appropriate:

(1) sums for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses;

(2) special medical, hospital, or dental expenses necessary to serve the best interests of the child; and

(3) fees mandated under Title IV–D of the federal Social Security Act.

Effective October 1, 1989, the Indiana Child Support Guidelines must be applied in every instance in which child support is being established. *Matter of Paternity of R.B.T.* (1990), Ind.App., 550 N.E.2d 769. In any proceeding for the award of child support, there shall be a rebuttable presumption that the amount of the award which would result from the application of the Guidelines is the correct amount of child support to be awarded. Ind. Child Support Rule 2. If after considering the relevant factors as set out above, the trial court believes the Guideline amount is unjust in a particular case, the court may state a factual basis for the deviation and proceed to enter a support amount that it deems appropriate. Ind. Child Supp.R. 3; Ind. Child Support Guideline 3(F). The child support guidelines are consistent with the statute which places a duty upon either or both

parents to support their children in that the guidelines presume a division of support obligation in proportion to each parent's income. *Gielsdorf–Aliah v. Aliah* (1990), Ind.App., 560 N.E.2d 1275.

### A.

The Receipt of SSI Income on Adam's Behalf

■ Richard asserts the trial court should have set his child support obligation at a lower amount because Elizabeth receives approximately $200.00 per month in Supplemental Security Income [SSI] on Adam's behalf. The Supplemental Security Income Program, Title XVI of the Social Security Act, is a social welfare program for the aged, blind, and disabled. *See* 42 U.S.C. § 1382c(a)(1) (1983 & Supp.1990). Eligibility is based on need: SSI is paid to families of disabled children qualifying under the Act to ensure that the recipient's needs are met at a subsistence level. Ruppert & Weinland, *Developments in Social Security Law*, 24 Ind.L.Rev. 1109, 1110 (1991). Congress included disabled children under the SSI program in the:

> belief that disabled children who live in low-income households are certainly among the most disadvantaged of all Americans and that they are deserving of special assistance in order to help them become self-supporting members of our society. Making it possible for disabled children to get benefits under this program, if it is to their advantage, rather than under the programs for families with children, would be appropriate because their needs are often greater than those of nondisabled children.

H.R.Rep. No. 231, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 4989, 5133–5134.

■ SSI benefits received by a disabled child are intended to supplement other income, not substitute for it. *Oatley v. Oatley* (1977), 57 Ohio App.2d 226, 387 N.E.2d 245. Accordingly, the noncustodial parent's child support obligation is not impacted by the receipt of SSI on the behalf of a disabled child. *Id.* SSI benefits represent gratuitous contributions from the government and do not reduce the noncustodial parent's child support obligation. *In re Marriage of Thornton* (1990), Colo.App., 802 P.2d 1194.

Congress determined that disabled children generally have greater needs than nondisabled children. We believe that SSI benefits paid to a family with a disabled child serve to bring that family back on a par with families without disabled children. Under the rationale of the authority set out above, we find the trial court abused no discretion in refusing to deviate from the guideline amount of support based on the SSI benefits. Therefore, we find no error.

### B.

Elizabeth's Income of $100.00 Per Month From The Property Distribution

■ As stated above, Richard was awarded the marital residence in the property distribution and was required to pay Elizabeth her share of the equity, $3,500.00, at the rate of $100.00 per month. Richard asserts that the trial court should have included the $100.00 per month in Elizabeth's gross income for the purposes of calculating child support.

The Guidelines define "weekly gross income" as:

> actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed and imputed income based upon 'in-kind' benefits. Weekly gross income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, dividends, severance pay pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and alimony or maintenance received from other marriages. Specifically excluded are benefits from means-tested public assistance programs, including, but not limited to, Aid to Families with Dependent Children, Supple-

mental Security Income, Food Stamps and General Assistance.

Child Supp.G. 3(A)(1).

The $100.00 per month is a property settlement payment. It is not maintenance and is not properly included in the definition of gross income for the purposes of calculating child support. The trial court's disposition of the marital property—which permitted Richard to pay his debt to Elizabeth over time without interest—was favorable to Richard. The trial court could have required Richard to pay the $3,500.00 immediately after the divorce rendering Richard unable to bring this issue before us. We do not believe the terms of the property distribution should impact an order of child support. Therefore, we find no error.

## C.

### Elizabeth's Fiance

■ Elizabeth's fiance lives with her and shares in the household expenses. Richard argues the money Elizabeth saves by sharing expenses should be attributed to her as income and reduce his child support award.

Richard has remarried. But, Elizabeth has not suggested that his spouse's income, or imputed income, should be attributed to Richard for the purposes of calculating his child support obligation. It is axiomatic and requires no citation to authority that the income of the step-parents is not considered in calculating an award of child support. We do not believe the legal relationship between a parent and her cohabitant appropriately impacts this well-settled rule. We cannot conclude that the trial court abused its discretion by failing to impute income to Elizabeth based on the savings accrued by sharing expenses with her fiance. Therefore, we find no error.

### D.

### The Expenses Saved By Adam's Attendance at Deaf School

■ As mentioned earlier, Adam attends the deaf school from Sunday evening until Friday afternoon each week during the school year. Tuition, room and board are provided at no cost to the family. Eliza-

beth is reimbursed at $.25 per mile for transporting Adam to and from the deaf school in her car. Richard asserts these factors militate toward a lower child support obligation.

■ The determination of a proper amount of child support is committed to judicial discretion, and such determination will not be disturbed unless it constitutes an abuse of discretion or is contrary to law. *Olson v. Olson* (1983), Ind.App., 445 N.E.2d 1386. Richard bore the burden of demonstrating that the presumptive guideline amount was unjust and a deviation from that amount was warranted. We believe the determination of whether an application of the guidelines results in an unjust award of child support to be a matter left to the sound discretion of the trial court.

In the present case, Elizabeth has custody of both children. Adam lives at home on the weekends. We cannot conclude that the savings attributable to Adam's attendance of deaf school are so substantial as to render the presumptive guideline amount of child support unjust as a matter of law. Under all the circumstances, we cannot conclude that the trial court abused its discretion in determining that the presumptive guideline amount of child support was not rebutted. Therefore, we find no error.

## II.

Whether the trial court abused its discretion by requiring Richard to pay 73% of Adam's child care costs which would be incurred only during the summer?

■ Elizabeth testified that she would need child care for Adam while she was at work during the summer when Adam would not be attending the deaf school. At trial, she did not know how much this expense would amount to. The trial court determined that Richard would be responsible for 73% of this expense, his percentage of the parties' total available income.

■ Child care costs incurred due to employment should be added to the basic child support obligation for the purposes of calculating the guideline amount. Child

Supp.G. 3(E)(1); *Carter by Carter v. Morrow* (1990), Ind.App., 563 N.E.2d 183. Employment related child care expenses should be shared by both parents because, depending on the circumstances, custodial parents may find it economically impracticable to work if they must bear the expense alone. *Id.* That custodial parents should be able to afford to work is an important public policy goal. *Id.* Whether to increase a basic child support award to offset employment related child care expenses is a matter for the trial court's discretion, and a decision not to allow such an increase does not require a written finding justifying a deviation from the guideline amount. *Id.*

In the calculation of guideline support, the work-related child care costs are added to the basic child support obligation. This sum is then multiplied by each parent's percentage share of income to determine the guideline amount of support. Therefore, each parent pays his or her percentage share of income of the child care costs.

In the present case, the trial court's disposition of this matter is entirely consistent with the guidelines. Each parent is responsible for his or her percentage share of income of the child care costs. Considering that these costs will only be incurred during the summer, we cannot conclude that the trial court's order that Richard pay his share of Adam's work-related child care, provided for outside the guideline computation, constitutes an abuse of discretion. Therefore, we find no error.

### III.

Whether the trial court abused its discretion in allocating the uninsured medical expenses?

In the original divorce decree, Richard was ordered to pay 70% of the uninsured medical, dental, and optometric expenses. The trial court did not modify this provision in the present action. Nevertheless, Richard asserts this percentage is too high. He correctly asserts that the presumptive guideline amounts take into consideration ordinary medical expenses. *See* Commentary of Child Supp.G. 3; *Grammer v.*

*Grammer* (1991), Ind.App., 566 N.E.2d 1080.

The trial court did not modify this provision. Richard did not request the trial court to modify this provision. We do not believe that this matter has been appropriately presented for appeal. *Rodgers v. Rodgers* (1987), Ind.App., 503 N.E.2d 1255, *trans. denied.*

Nevertheless, we would note that the commentary to the Guidelines reads in pertinent part as follows:

Certain adjustments are added to the basic child support obligation in arriving at the total child support obligation. Each of these items have been, and will continue to be, the sources of heated battles between parents. In each instance the court or the parties may choose to deal with these subjects separately and distinctly from child support.

\* \* \* \* \* \*

It has been the practice in many courts to apportion between the parents the medical, dental and optical expenses that exceed insurance, usually on an equal basis. The data on which the Guideline schedules are based included a component for ordinary medical expenses. Specifically, 6% (six percent) of the support amount is for health care expense. It is *suggested,* if an apportionment is made, that the custodial parent absorb a specified amount of expense per occurrence of illness (that is, for one particular illness or injury) before the noncustodial parent is required to contribute. An argument could be made for amounts over that specific amount to be apportioned according to the percentages developed on line 3 of the worksheet, the Percentage Share of Income. (Line 4B of worksheet) As an alternative, the custodial parent *could* be ordered to absorb a specified amount of medical expenses annually before the obligor is required to begin paying toward medical expenses.

Child Supp.G. 3 (Commentary) (Emphasis added).

The Guidelines do not mandate any particular treatment of uninsured medical expenses. The commentary merely sug-

gests an apportionment of such expenses after the custodial parent absorbs an amount equal to 6% of the basic support obligation. Therefore, we must conclude that the apportionment of uninsured medical expenses is a matter left to the sound discretion of the trial court.[2]

■ In the present case, Richard's percentage share of income is 73%. The trial court's order makes him only responsible for 70% of the uninsured medicals. Under the circumstances, we cannot conclude that the trial court has abused its discretion in allocating the uninsured medical expenses. Therefore, we find no error.

## IV.

Whether the trial court erred in striking Richard's child support guideline worksheet submitted after trial?

■ At the conclusion of the trial in this matter, the parties waived final argument. The trial court granted Richard permission to submit a child support guideline worksheet to the court at a later time. Richard submitted a worksheet with an attached page entitled "Comments." Richard's "Comments" consists of his interpretation of the evidence and his arguments concerning what amount of child support he believed the trial court should award. Upon Elizabeth's motion, the trial court struck Richard's worksheet and "Comments."

Richard asserts that his "Comments" were appropriately included with his child support guideline worksheet and refers to the example worksheet in the guidelines which provides a space for "comments, calculations, or rebuttals to the schedule." He argues that his comments were supported by the evidence and the inclusion of his "comments" was appropriate and not an effort to improperly introduce new evidence. He argues the trial court's striking of his worksheet and "comments" was prejudicial error because it indicated the trial court ignored the factors pointed out in his "comments."

■ In divorce cases, we presume the trial court followed the law and made all the proper considerations in the exercise of its discretion. *White v. White* (1981), Ind. App., 425 N.E.2d 726. Moreover, we presume that the divorce court considered all the evidence before it in reaching its decision. *Benda v. Benda* (1990), Ind.App., 553 N.E.2d 159, *trans. denied.*

Accepting as true Richard's assertion that his worksheet and "comments" were based upon the evidence presented at trial, these documents constituted merely cumulative evidence and could not have resulted in prejudice to Richard. Therefore, we find no reversible error.

## V.

Whether the trial court lacked the jurisdiction to entertain the post-trial proceedings regarding Elizabeth's petitions for contempt and appellate attorney's fees?

Richard asserts the trial court was divested of jurisdiction in this case the moment he filed for a stay of execution in our court. Therefore, he asserts the trial court was without authority to act on Elizabeth's post-trial petitions for contempt and appellate attorney's fees. The record of proceedings for this case was filed with the clerk of our court after the trial court had entered the orders about which Richard complains.

■ Indiana Appellate Rule 3(A) reads as follows:

Every appeal shall be deemed submitted and the appellate tribunal deemed to have acquired jurisdiction thereof on the date the record of the proceedings is filed with the clerk of the Supreme Court and Court of Appeals.

The jurisdiction of the appellate court arises upon the timely filing of the record of the proceedings, and as of that time the trial court loses jurisdiction to alter or

---

2. We recognize that our decision is not consistent with *Grammer v. Grammer* (1991), Ind.App.,

566 N.E.2d 1080.

amend the judgment. *Coulson v. Indiana & Michigan Electric Co.* (1984), Ind., 471 N.E.2d 278.

■ The trial court is divested of jurisdiction when the record of proceedings is filed with the clerk of our court, not when a petition for a stay of execution is filed in our court. Therefore, we find no error in the trial court's exercise of jurisdiction before the record of proceedings was filed with the clerk of our court.[3]

## VI.

Whether the trial court erred in its entry regarding appellate attorney's fees?

. ■ Richard asserts the trial court's award of appellate attorney fees is unsupported by the evidence. With respect to Elizabeth's petition for appellate attorney's fees, the trial court made the following finding and entry:

The reasonable costs of appellate attorney fees to [Elizabeth] in defending the appeal in this cause is between the sum of three Thousand Dollars ($3,000.00) and Four Thousand Dollars ($4,000.00). The cost of defending the appeal on behalf of [Elizabeth] in this matter shall be born by [Richard] with the actual sum to be assessed against [Richard] upon the completion of the appellate process; provided, however, [Richard] shall make available to [Elizabeth's] counsel the initial sum of Two Thousand dollars ($2,000.00) which shall be due and payable when the Appellee's Brief has been filed in the appeal.

Indiana Code 31–1–11.5–16(a) provides:

The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending [any dissolution proceeding] and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be

paid directly to the attorney, who may enforce the order in his name.

The court may consider the cost of defending an appeal when fashioning its award of attorneys' fees. *Holman v. Holman* (1985), Ind.App., 472 N.E.2d 1279. The statute gives broad discretion to the trial court in awarding attorney fees, including amounts awarded *pendente lite* or pending the action, and such an award will be reversed only where an abuse of that discretion is shown. *Svetich v. Svetich* (1981), Ind.App., 425 N.E.2d 191. An amount of attorney fees awarded prospectively is much like a retainer, the amount of which is left to the wise discretion of the trial judge and which will be reversed only where that discretion is abused. *Id.*

■ The trial court's finding that a reasonable attorney's fee for the defense of this appeal would be between $3,000.00 and $4,000.00 is obviously mere surplusage because the trial court provided that the reasonable fee would be determined at the end of the appellate process. As mere surplusage, the finding cannot constitute reversible error. *Donovan v. Ivy Knoll Apartments Partnership* (1989), Ind.App., 537 N.E.2d 47.

■ Moreover, we believe the $2,000.00 fee is essentially a retainer. Indiana Professional Conduct Rule 1.16(d) provides that upon the termination of representation, a lawyer shall refund any advance payment of fee that has not been earned. *Jennings v. Backmeyer* (1991), Ind.App., 569 N.E.2d 689; *Estate of Forrester v. Dawalt* (1991), Ind.App., 562 N.E.2d 1315, *trans. denied.* Therefore, the $2,000.00 retainer does not represent a minimum fee. At the conclusion of the appellate process, the trial court will hear evidence in order to determine the reasonable fee. If the reasonable fee is determined to be less than $2,000.00, Richard will be entitled to a refund.

We hold that the trial court's prospective award of $2,000.00 as a retainer for Eliza-

---

**3.** Incidentally, we have held that the perfection of an appeal in a dissolution proceeding did not deprive the trial court of jurisdiction to make an award of appellate attorney's fees. *Wagner v.*

*Wagner* (1986), Ind.App., 491 N.E.2d 549; *But see, contra, Hudson v. Hudson* (1985), Ind.App., 484 N.E.2d 579.

beth's attorney's defense of this appeal was well within the divorce court's discretion and authority under I.C. 31–1–11.5–16. Therefore, we find no error.

Judgment affirmed.

BAKER, J., concurs.

SHIELDS, J., concurs in result as to issue III. Concurs as to all other issues.