In re the Marriage of Lorraine
K. LULAY, Appellant–
Respondent,

v.

Bernard R. LULAY, Appellee–Plaintiff.

No. 32A01–9105–CV–156.

Court of Appeals of Indiana,
First District.

Dec. 24, 1991.

Lynden Dianne Schmidt, Indianapolis, Paul G. Bradshaw, Peoria, Ill., for appellant-respondent.

Douglas W. Meyer, Elmendorf, Meyer & Freese, Plainfield, for appellee-plaintiff.

BAKER, Judge.

Respondent-appellant Lorraine Lulay (Lorraine) appeals from the trial court's decree dissolving her marriage to petitioner-appellee Bernard Lulay (Bernard). She raises three issues for our review, which we restate as:

I. Whether the trial court abused its discretion in apportioning the children's

uninsured medical, dental, optical and prescription expenses.

II. Whether the trial court abused its discretion in dividing the marital property.

III. Whether the trial court abused its discretion in failing to award Lorraine rehabilitative maintenance.

We affirm.

## FACTS

Lorraine and Bernard were married on July 16, 1977. Lorraine was 23 years old and had received an associates in arts degree from Illinois Central College. During the early years of their marriage she gave private piano lessons in their home, teaching approximately 75 students a week for $7.00 per half hour lesson. Their first children, twins, were born three years after they were married, and a third child was born three years after the twins' birth. After starting their family, Lorraine was primarily a full-time homemaker and mother, although she continued to supplement the family income by giving piano lessons to nine students a week. Once her children got a little older, however, she sought employment outside of the home in secretarial and business administration positions.

Bernard married Lorraine when he was 26 years old. Before their marriage, he served briefly in the military but was discharged after he injured his knee during basic training. He receives a military disability pension of $66.04 per week for the injury. During their marriage, Bernard earned his associate's degree from Illinois Central College by taking evening classes after working at his full-time job. His military service qualified him for education benefits through the G.I. Bill, which paid 100% of his tuition from 1971–81. His former employer, Caterpillar Tractor, paid all of his tuition between 1981–83, and his present employer, PSI Energy, currently pays 80% of his tuition and books. At the time of the final hearing in the dissolution proceedings, Bernard was nine hours short of earning his bachelor's degree in management. He is currently employed by PSI Energy as a senior project control engineer with an annual salary of approximately $50,400.

Bernard filed a petition for dissolution of their marriage on March 7, 1990, and the trial court entered the decree on December 11, 1990. The trial court awarded Lorraine custody of their children and gave her the family residence and most of the personal property.

## DISCUSSION AND DECISION

### I

Lorraine argues the trial court abused its discretion in apportioning the payment of the children's uninsured medical, dental, optical, and prescription expenses. Under the court's order, Lorraine is responsible for paying the first $950.00 of uninsured expenses incurred per calendar year, while any amount over $950.00 is to be split equally between Lorraine and Bernard. Lorraine argues the trial court abused its discretion by placing on her this additional financial burden when Bernard is in a much better financial position to pay these expenses.

Payment of children's medical expenses in an action for dissolution of marriage is provided for by IND. CODE 31–1–11.5–12(b)(2). The section provides that the child support order may include "special medical, hospital, or dental expenses necessary to serve the best interests of the child." As well, the Indiana Supreme Court adopted the Child Support Guidelines and Commentary, which are to be applied "in all proceedings where child support is established or modified on and after October 1, 1989." Commentary, Ind. Child Support Guideline 1. In regard to apportioning uninsured medical expenses, the commentary provides, in pertinent part:

It has been the practice in many courts to apportion between the parents the medical, dental and optical expenses that exceed insurance, usually on an equal basis. The date on which the Guideline schedules are based included a component for ordinary medical expenses. Specifically, 6% (six percent) of the support amount is for health care expense.

It is suggested, if an apportionment is made, that the custodial parent absorb a specified amount of expense per occurrence of illness (that is, for one particular illness or injury) before the noncustodial parent is required to contribute. An argument could be made for amounts over that specific amount to be apportioned according to the percentages developed on line 3 of the worksheet, the Percentage Share of Income. (Line 4B of worksheet) As an alternative, the custodial parent could be ordered to absorb a specified amount of medical expenses annually before the obligor is required to begin paying toward medical expenses.

Commentary, Ind. Child Support Guideline 3(E).

■ Conflict has recently developed in Indiana case law regarding discretion afforded the trial court in apportioning uninsured medical expenses. In *Grammer v. Grammer* (1991), Ind.App., 566 N.E.2d 1080, this court held that the Indiana Child Support Guidelines provide presumptive mandates, requiring deviations to be accompanied by written findings articulating why the presumptive amount is unjust. This court had reached a similar decision in *In re Humphrey* (1990), Ind.App., 561 N.E.2d 502, in which we found that the guidelines provide presumptively correct child support awards, but held the judge may deviate from the presumptions when he or she finds "the presumptive amount is unreasonable, unjust or inappropriate." *Id.* at 502. We have retreated, however, from viewing the guidelines as presumptive mandates. In *Kyle v. Kyle* (1991), Ind. App., 582 N.E.2d 842, we recognized that "the Guidelines do not mandate any particular treatment of uninsured medical expenses," but found the commentary merely suggests ways to apportion them. *Id.* at 848–49. Because the trial court is not strictly bound by the guidelines, apportionment of uninsured medical expenses is left to the trial court's sound discretion. *Cox v. Cox* (1991), Ind.App., 580 N.E.2d 344, 351–52; *Kyle, supra.* When this court is asked to decide whether the trial court abused its discretion, we will find it did only when the decision is against the clear logic and effect of the facts and circumstances before the court. *Porter v. Porter* (1988), Ind.App., 526 N.E.2d 219, 227, *trans. denied.*

■ In this case, the trial court ordered Bernard to maintain major medical insurance on the three children. He is also required to pay $304.65 per week in child support, of which six percent, or $18.27, is to be used by Lorraine to pay the children's uninsured medical expenses. Lorraine's responsibility for the first $950.00 in uninsured expenses is derived by multiplying the weekly payment of $18.27 times 52 weeks, for a total of approximately $950.00. Any expenses over $950.00 are to be divided equally between Lorraine and Bernard. This arrangement complies directly with an apportionment scheme suggested in the commentary to the Child Support Guidelines. Commentary, Ind. Child Support Guideline 3(E). Although trial courts may, in their sound discretion, order awards outside of the guidelines, Lorraine has failed to show in this case that the trial court abused its discretion when it complied with the guidelines. The order provides adequate support for the children and is consistent with both parents' ability to pay.

## II

Next, Lorraine argues the trial court abused its discretion in dividing the marital property. The division of marital property traditionally has been a matter for the sound discretion of the trial court. *In re Davidson* (1989), Ind.App., 540 N.E.2d 641, 645. When we decide whether the trial court abused its discretion, we presume the trial court followed the law and made all the proper considerations. *White v. White* (1981), Ind.App., 425 N.E.2d 726. Furthermore, we consider only the evidence most favorable to the prevailing party and will not reweigh the evidence or assess the credibility of the witnesses. *Benda v. Benda* (1990), Ind.App., 553 N.E.2d 159, 163, *trans. denied.*

To guide the division of marital property, the legislature enacted IND.CODE 31-1-11.5-11, which provides, in pertinent part:

(c) The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of the children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or the earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

■ Although Lorraine concedes the trial court ordered a fairly equal division of the marital property, she makes three other complaints about the division. First, she argues the trial court erred in failing to include as a marital asset Bernard's military disability pension. The military disability pension vested in Bernard before he married Lorraine. Because Lorraine did not invest her efforts so Bernard could have an interest in this pension, the trial court properly excluded it from the marital pot. *See In re Adams* (1989), Ind., 535 N.E.2d 124, 127.

■ Lorraine also argues the trial court erred in failing to include as a marital asset Bernard's entire interest in his pension from Caterpillar Tractor. Although the record reveals the entire pension vested in Bernard while he and Lorraine were married, some of the value actually accumulated before they were married. The trial court excluded from the dissolution decree the value of the pension that accumulated before Bernard and Lorraine were married, and included the value that accumulated after they were married. Because Lorraine did not invest her efforts to help Bernard acquire an interest in the pension before their marriage, she now has no rights in the interest that accumulated at that time. *See In re Adams, supra.* Accordingly, the trial court properly excluded it from the dissolution decree.

■ Third, Lorraine argues the trial court abused its discretion when it awarded her assets with no liquidity and made her liable for a large portion of the couple's debts. Here, Lorraine was awarded the family residence and most of the personal property. She is responsible for the mortgage and must pay Bernard $9292.52 on November 11, 1995, or earlier if one of four specified events occurs. We fail to find how this award was an abuse of the trial court's discretion. *In re Davidson, supra.* The nine pages of thorough findings and conclusions reveal the trial court considered the couple's debts and assets when it issued its order. *See In re Salas* (1983), Ind.App., 447 N.E.2d 1176, 1181. It is not our function to weigh the evidence already weighed by the trial court. *In re Davidson, supra.* Furthermore, Bernard correctly notes in his Appellee's Brief that there were not significant liquid assets to be divided. The trial court could not award assets the couple did not have. *In re McManama* (1980), 272 Ind. 483, 399 N.E.2d 371, 373.

### III

■ The final issue raised by Lorraine is the trial court's failure to award her rehabilitative maintenance. The award of rehabilitative maintenance is provided for by IND.CODE 31–1–11.5–11, which states, in pertinent part:

(e) A court may make the following findings concerning maintenance:

. . . .

(3) After considering:

(A) the educational level of each spouse at the time of marriage and at the time the action is commenced;

(B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;

(C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

(D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;

a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

Again, the decision to award rehabilitative maintenance is a matter wholly within the trial court's discretion. *Beeson v. Beeson* (1989), Ind.App., 538 N.E.2d 293, 297. In this case, the trial court did not abuse its discretion when it denied Lorraine rehabilitative maintenance. She earned her associates degree before she was married, and she has been in and out of the job market both before and after she had children. Furthermore, Lorraine's resume, which she has mailed to prospective employers, lists her employment history and identifies a history of numerous job-related responsibilities. Because her education and employment history demonstrate her capacity to make a living, there was a rational basis for the trial court to deny Lorraine rehabilitative maintenance. We will not disturb the trial court's decision.

Judgment affirmed.

RATLIFF, C.J., and RUCKER, J., concur.