# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2017, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donna Jameson
Greenwood, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sharon Stroup Dorscher, | June 29, 2017 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 03A01-1609-DR-2071 |
| v. | Appeal from the Bartholomew Circuit Court |
| Robert Dale Stroup, | The Honorable Bruce A. MacTavish, Judge |
| *Appellee-Respondent* | Trial Court Cause No. 03C01-0009-DR-1383 |

**May, Judge.**

[1] Sharon Stroup Dorscher ("Mother") appeals the trial court's order regarding Robert Dale Stroup's ("Father") child support responsibilities and arrears. Specifically, she challenges the trial court's finding Father's social security income should be considered to satisfy his child support obligations and arrearage. As Mother has demonstrated *prima facie* error, we reverse and remand.

## Facts and Procedural History

[2] Mother and Father were divorced on April 10, 2001. Two children were born of the marriage, Adam, born in 1982, and Patrick, born in 1992. The dissolution court granted Mother custody of Adam and Patrick, who at the time were both unemancipated. The trial court granted Father parenting time and ordered him to pay child support. Adam is the subject of a continuing support order, as he is "autistic and non-verbal" and "will not be able to support himself and will require assistance throughout his life." (Appellant's App. Vol. II at 15.) From 2001 to 2015, the parties were often in court to address Father's non-payment of support.

[3] From the mid-1990's until July 2013, Adam received Supplemental Security Income ("SSI"), a government benefit, because of his disability. In July 2013, when Father reached retirement age, Adam began receiving Social Security Retirement Survivor Disability Income ("SSDI"). Mother contacted the Social Security office to ask if Adam could receive SSI benefits instead of SSDI benefits. She was told Adam was ineligible for SSI benefits because Father had

reached retirement age and started receiving retirement benefits ("SSA"), which were imputed to Adam as SSDI benefits.

[4] Twice Adam did not receive a SSDI benefit check because Father's earnings exceeded those permitted for SSA benefit eligibility. Sometime during 2014 and 2015, the Social Security Administration sought to discontinue Adam's SSDI benefits because Father earned too much income. Mother successfully appealed that decision and Adam continued to receive SSDI benefits. Mother testified she received information that, in 2016, Father reached the age at which his SSA benefits are not limited by the amount of income he earns, so Adam should not experience an interruption of SSDI benefits for that reason in the future.

[5] On March 18, 2015, Mother filed a petition to modify child support and motion for contempt citation based on Father's non-payment of child support. On June 5, 2015, the trial court held a hearing and issued an order finding Father owed Mother $6,935.00 in child support arrearage. The trial court ordered an Income Withholding Order issued to Father's employer for $95.00 per week to satisfy the arrearage. The court deferred the issue of future child support and Mother's attorney's fees to a later hearing.

[6] On February 26, 2016, the trial court held a hearing on all pending matters. On March 30, 2016, the trial court ordered, in relevant part:

> 1. The Court finds that the current arrearage is $8,214.00. The Court finds that as of July 1, 2013[,] Petitioner, [Mother] has received social security benefits based on Respondent's,

[Father's,] disability. Petitioner [Mother,] has received SSA not SSI as a result of payments being made based on [Father's] retirement since July 1, 2013. Since July 1, 2013 and going forward the payments made through SSD based on Respondent's, [Father's,] retirement disability are credited against his child support obligation and satisfy his child support obligation. [Father] is given credit for $2600.00 he has paid since the last order.

2. The Court orders Respondent, [Father,] to pay his tax refund against the arrears and to continue to pay $95.00 per week against the arrearage until it is satisfied in full.

(*Id*. at 13-14) (any errors in original).

On April 29, 2016, Mother filed a motion to correct error, asserting, in relevant part:

3. Paragraph #1 of the Court's Order of March 30, 2016 states that [Mother] has received social security benefits based on [Father's] disability.

This is erroneous as Mother has NOT received social security benefits directly to herself. Mother has received social security benefits as representative payee for the parties' son, [Adam.]

In addition, this holding is erroneous as the benefits that the son received are based upon Father's retirement NOT any disability on behalf of Father.

4. Paragraph #1 of the Court's Order of March 30, 2016 states that Mother has received SSA not SSI as a result of payments being made based on [Father's] retirement since July 1, 2013.

> This is erroneous in that Mother's [sic] as representative payee of [Adam] receives Retirement, Survivors and Disability Insurance (See Exhibit #A) attached. [sic]
>
> 5. Paragraph #1 of the Court Order of March 30, 2016 states "Since July 1, 2013 and going forward the payments made through SSD based on [Father's] retirement disability are credited against his child support obligation and satisfy his child support obligation."
>
> Again, [Father] is not disabled. Rather, he is receiving retirement through Retirement, Survivors and Disability Insurance.

(*Id*. at 25-6) (emphasis in original). Mother also argued Father's Social Security income was separate from the money Adam received under SSDI and did not relieve Father of his child support obligations. Additionally, she challenged the trial court's calculation of Father's child support arrearage.

[8] On July 8, 2016, the trial court held a hearing on Mother's motion to correct error, but did not issue an order. Pursuant to Indiana Trial Rule 53.3,[1] Mother's motion to correct error was deemed denied on August 7, 2016, as the trial court had not issued an order on the matter.

---

[1] Indiana Trial Rule 53.3. states, in relevant part:

> In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied.

# Discussion and Decision[2]

The trial court *sua sponte* entered findings of fact and conclusions thereon. When a trial court enters findings and conclusions *sua sponte*, our standard of review is well-settled:

> Where the trial court enters specific findings *sua sponte*, [ ] the specific findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial.

> We apply the following two-tier standard of review to *sua sponte* findings and conclusions: whether the evidence supports the findings, and whether the findings support the judgment. Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility.

---

[2] As an initial matter, we note Father has not filed an appellee's brief. In such cases, we need not develop an argument for the appellee and we apply a less stringent standard of review. *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 725 (Ind. Ct. App. 2009). We may reverse if the appellant is able to establish *prima facie* error, which is error at first sight, on first appearance, or on the face of it. *Id*. The appellee's failure to provide argument does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Id*.

*Trust No. 6011, Lake Cty. Trust Co. v. Heil's Haven Condo. Homeowners Ass'n*, 967 N.E.2d 6, 14 (Ind. Ct. App. 2012), *trans. denied*.

### *Finding Regarding Social Security Benefits*

[10] In its order, the trial court found, "as of July 1, 2013[,] [Mother] has received social security benefits based on [Father's] disability. [Mother] has received SSA not SSI as a result of payments being made based on [Father's] retirement since July 1, 2013." (Appellant's App. Vol. II at 13.) Mother argues that finding is not supported by the evidence presented. We agree she has demonstrated a *prima facie* error in this regard.

[11] First, Mother presented evidence it was Adam, the parties' disabled child, not Mother, who received Social Security benefits. Mother simply acted as Adam's "representative payee." (*Id.* at 30.) Prior to July 2013, Adam received SSI benefits because he is disabled, and in July 2013, Adam began receiving SSDI "monthly child's benefits." (*Id.*)

[12] Further, Mother presented evidence the Social Security benefits were not based on Father having a disability. Instead, they were based on Adam's disability and the fact Father had reached retirement age and had begun receiving SSA benefits based on his earnings and age. (See Tr. at 17) (indicating Adam stopped receiving SSI benefits when Father reached retirement age and instead received "Social Security Retirement Survivor's Disability Insurance" (SSDI) benefits).

Finally, the court mischaracterized the benefits paid to Adam by virtue of his Father's retirement. Mother presented evidence Father received SSA benefits; Adam received SSDI benefits, which were survivor's benefits from Father's SSA benefit that Adam received because he is Father's disabled child. *See* https://www.ssa.gov/sf/FactSheets/aianssavsssifinalrev.pdf (last accessed June 9, 2017) (fact sheet outlining the differences between SSA and SSI benefits).

### *Conclusion Imputing Adam's SSDI Benefits to Father's Child Support Obligations*

The trial court concluded: "Since July 1, 2013 and going forward the payments made through SSD based on [Father's] retirement disability are credited against his child support obligation and satisfy his child support obligation." As Mother indicated in her motion to correct error and on appeal, this finding is contrary to established precedent. In *Stultz v. Stultz*, 659 N.E.2d 125 (Ind. 1995), our Indiana Supreme Court examined this issue at length:

> [I]n at least three contexts that we find quite similar to the present, the Court of Appeals has prohibited the use of benefits payable to children under government programs (and, therefore, analogous to the social security retirement benefits in this case) to offset payments to which the children were otherwise entitled. In *Head v. State* (1994), Ind. App., 632 N.E.2d 749, the Court of Appeals was faced with a request from the state to have paid over to it social security disability benefits received by children who were also beneficiaries of the federal welfare program, Aid to Families with Dependent Children (AFDC). The state's argument was grounded in federal and state statutes which required AFDC recipients to assign their right to child support to

the state to offset AFDC payments to which the children were otherwise entitled. 42 U.S.C. § 602(a)(26)(A); Ind. Code § 12-14-7-1. The *Head* court concluded that the social security benefits were not child support and, therefore, not subject to the assignment of rights requirement. In doing so, it discussed the United States Supreme Court case of *Sullivan v. Stroop*, 496 U.S. 478, 110 S. Ct. 2499, 110 L.Ed.2d 438 (1990), in which the high court considered a similar question - whether social security benefits received by children were to be considered income for purposes of the means test of the AFDC program:

> The Supreme Court observed that Title II Social Security payments "are explicitly characterized as 'insurance' benefits and are paid out of the public treasury to all applicants meeting the criteria." Sullivan, 496 U.S. at 485, 110 S. Ct. at 2504, 110 L.Ed.2d at 446. Thus, while the Court acknowledged that "Title II child's insurance benefits might be characterized as 'support' in the generic sense," those benefits were not the sort of child support payments from absent parents envisioned by the Act. *Id*. The Court then concluded that Title II child's insurance benefits are not "child support payments" and that no portion of those benefits may be disregarded when computing the combined value of the family's resources for AFDC benefits eligibility.

*Head*, 632 N.E.2d at 751-52.

In *Brummett v. Brummett* (1984), Ind. App., 472 N.E.2d 616, the Court of Appeals held that the trial court had not abused its discretion in finding that the receipt of social security survivor's benefits did not warrant reducing or abolishing the monthly child support obligation initially owed by the child's father and, after his death, owed by his estate. "[T]he trial court could reasonably have concluded the resources presently available to the supported

child . . . were significantly less than what would have been available if a dissolution of her parents [sic] marriage had not taken place." *Id*. at 619. In sorting out the difference between the social security survivor's benefits and the child support payments, Judge Shields noted, "The existence of social security payments is analogous to situations in which a supported child earns extra money at a job, but not enough to give the child emancipated status." *Id*. (quoting H. Clark, Jr., The Law of Domestic Relations 502 (1968)). As such, in this case it was not an abuse of the trial court's discretion to find that the social security survivor's benefits were not available to offset the child support payments to which the child was otherwise entitled.

In *Kyle v. Kyle* (1991), Ind. App., 582 N.E.2d 842, *trans. denied*, the non-custodial parent contended that the trial court should have set his child support obligation at a lower amount because the custodial parent received approximately $200.00 per month in Supplemental Security Income [SSI] on behalf of their disabled child. The Court of Appeals affirmed the trial court's rejection of the non-custodial parent's claim, holding that SSI benefits received by a disabled child are intended to supplement other income, not substitute for it. "Accordingly, the noncustodial parent's child support obligation is not impacted by the receipt of SSI on the behalf of a disabled child. SSI benefits represent gratuitous contributions from the government and do not reduce the noncustodial parent's child support obligation." *Id*. at 846.

While we recognize that these three cases involve different types of benefits than the social security retirement benefits received by the Stultz children - social security disability benefits in *Head*; social security survivor benefits in *Brummett*; and supplemental security income benefits in *Kyle* - the common thread that links all four of these types of benefits in our minds is that they are all payments from the government to all eligible children. Or, as the Supreme Court said in *Sullivan v. Stroop*, "benefits . . . paid out of the public treasury to all applicants meeting the criteria." 496

U.S. at 485, 110 S. Ct. at 2504. In *Head*, *Brummett*, and *Kyle* the Court of Appeals concluded that the payments were not child support and were not available to offset the AFDC (in *Head*) or child support (in *Brummett* and *Kyle*) to which the children in those cases were otherwise entitled. We think that this principle should be the general rule for social security retirement payments to children as well. After all, just like the parents of the children receiving social security disability, social security survivor's, and supplemental security income benefits in these three cases, the retired parent pays no additional premiums in order to entitle his or her child to benefits - the amount of social security contributions paid by the retired parent and his or her employer are the same whether the parent is married or single and whether he or she has children or not. Perhaps more significant, the retired parent's own social security retirement benefits are not reduced or changed by the benefits his or her children receive. It seems to us that what is going on here is that Congress has created an entitlement for the minor children of all social security participants who retire. But it is the children's entitlement, not the retiree's, and should not as a general rule diminish the legal obligation of retirees to support their children.

*Id*. at 129-30.

[15] The benefit bestowed on the Stultz children by the government is the same as the benefit Adam receives by virtue of Father's retirement. *See id*. at 126 ("Each of the two Stultz children received $425 a month in social security benefits as a result of Mr. Stultz's retirement in 1994. . . . [The government paid the amount] directly to the children."). Also, as in *Stultz*, Father here receives SSA benefits separate from the SSDI benefits Adam receives, and there is no evidence suggesting Father's SSA benefit is decreased based on the fact Adam receives SSDI benefits. Additionally, Mother introduced evidence Adam would receive

less child support under this arrangement than previously ordered by the trial court. As in *Stultz*, the trial court has created a situation here in which Father, "although he has regular and ongoing income, will pay NO child support. Uncle Sam will pay it for him." *Id*. at 130 n.9.

### *Finding Regarding Father's Child Support Arrearage*

[16] The trial court found and concluded Father owed $8,214.00 in child support arrears. It is unclear from the record how the trial court came to that amount. Mother presented documentation of Father's arrearage and payments over a number of years. Father and Mother provided testimony regarding Father's payment and non-payment of child support following the trial court's original child support order in 2001. Mother's evidence suggests Father's arrearage could be as high as $22,371.00. Based on our other holdings in this opinion, and the fact there is no indication in the record how the trial court calculated the arrearage amount, we reverse and remand for recalculation of Father's child support arrearage.

# Conclusion

[17] We hold Mother has demonstrated the trial court committed *prima facie* error when it (1) misstated the type of social security benefits involved in the case; (2) misidentified Mother as the recipient of those benefits; (3) allowed Father to credit Adam's SSDI benefits against Father's child support obligation; and (4) did not indicate how it calculated Father's child support arrearage.

Accordingly, we reverse the trial court's decision and remand for findings and conclusions consistent with this opinion.

[18] Reversed and remanded.

Brown, J., and Pyle, J., concur.