Douglas Wayne BROTHERTON, Appellant,

v.

Tahni BROTHERTON, Appellee.

No. S–7209.

Supreme Court of Alaska.

July 18, 1997.

---

Herbert M. Pearce, Law Office of Herbert M. Pearce, Anchorage, for Appellant.

Allen M. Bailey, Law Offices of Allen M. Bailey, Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

## I. FACTS AND PROCEEDINGS

Douglas Brotherton and Tahni Brotherton were married in 1981. They have two children. They separated in 1991, and Tahni filed a complaint for divorce in 1994. In April 1995, the superior court entered a decree of divorce that awarded Tahni and Douglas joint legal custody of the children, awarded Tahni primary physical custody of the children, divided the parties' assets, dealt with Tahni's request for alimony by "consider[ing] all of the property of the parties, including the $33,800 equity in Douglas' premarital property in Wasilla," and awarded Tahni $2,500 for attorney's fees. Douglas appeals. He disputes several aspects of the superior court's property division, the invasion of his premarital property to satisfy Tahni's alimony request, and the attorney's fees award. We reverse and remand for further proceedings.

## II. DISCUSSION

### A. The Property Division Was Flawed in Several Respects.

#### 1. Standard of review

■ Property division consists of three steps: determining what property is available for distribution, placing a value on that property, and allocating the property equitably. *Moffitt v. Moffitt,* 749 P.2d 343, 346 (Alaska 1988); *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983).

■ The first step is to determine what property is marital, and thus available for distribution. *Moffitt,* 749 P.2d at 346. The court's characterization of property as marital or separate is reviewed for an abuse of discretion. *See Jones v. Jones,* 835 P.2d 1173, 1175 (Alaska 1992); *Doyle v. Doyle,* 815 P.2d 366, 368 (Alaska 1991). However, when the court makes a legal determination in the course of taking this step, that determination is reviewed *de novo. Cox v. Cox,* 882 P.2d

909, 913 (Alaska 1994); *Moffitt,* 749 P.2d at 346.

■ The second step is to place a value on the marital property. *Wanberg,* 664 P.2d at 570. The court's determinations of value are factual decisions that will be reversed only if clearly erroneous. *Doyle,* 815 P.2d at 368; *Cox,* 882 P.2d at 913–14.

■ The final step is to determine if an equitable distribution of the property is possible. The court's decision on distribution is reviewed under an abuse of discretion standard, and will be reversed only if clearly unjust. *Cox,* 882 P.2d at 914; *Doyle,* 815 P.2d at 368.

2. *The superior court erroneously failed to consider Tahni's receipt of the Papoose Twins property in its allocation of the marital property.*

■ During the marriage, Douglas and Tahni staked and improved a five-acre parcel known as the Papoose Twins Property. Title to the property is in Tahni's name. Tahni testified that the property is not transferable and requested that the court award the property to her. Douglas did not object to her request. Douglas and Tahni agree that the value of the property is $3,500. The superior court did not mention the Papoose Twins Property in its allocation of the marital estate.

Douglas argues that the superior court abused its discretion by failing to acknowledge Tahni's receipt of the Papoose Twins property and adjust the property allocation for its $3,500 value. Tahni agrees that "[t]he trial court should have allocated the Papoose [T]wins parcel to one of the parties," but argues that the nontransferability of the property made an award to her the only possible option. She further argues that the award of the property to her should not affect the other aspects of the court's property division.

1. *See, e.g., Julsen v. Julsen,* 741 P.2d 642, 648 (Alaska 1987) (spouse's inheritance not marital property).

■ Douglas is correct. With few exceptions,[1] the property available for distribution includes all assets acquired during marriage. *Lundquist v. Lundquist,* 923 P.2d 42, 47 (Alaska 1996). The Papoose Twins property was acquired during the parties' marriage. It is marital property that the court should have allocated. Furthermore, the $3,500 value the parties ascribe to the property is not insignificant in comparison with the value of the net assets allocated by the court, which approximate $68,000. We therefore remand the case to the superior court for an allocation of the Papoose Twins property and a reevaluation of the equity of the division of the marital estate, in light of the allocation of that property.

3. *The superior court did not err in determining the date of separation.*

■ The superior court found that "[t]he parties separated for the final time on or about September 1991." Douglas argues that this finding was erroneous, because "the trial testimony of both Tahni and Douglas was that the parties separated in June of 1991 and from that time forward ceased to function economically as a single unit." His argument is not persuasive.

In his reply brief, Douglas contradicts his earlier assertion, stating that "[t]he only evidence offered at trial as to the date of separation was the testimony of Douglas." He testified that he believed the date of separation should be June, because that was when he divided up the couple's bank accounts. However, Douglas also testified that he spent two weeks in August—the only two weeks in July and August during which he was not working at a remote location—in the home he shared with Tahni and did not move into a separate apartment until September 1991. The couple's cohabitation during August is not consistent with Douglas's claim that he and Tahni ceased to function as a single economic unit at the end of June. We affirm the superior court's finding with regard to the date of separation.[2]

2. With regard to certain retirement benefits Douglas had earned, the superior court found that it could not accurately value them, and therefore entered a qualified domestic relations

#### 4. The superior court did not err in its valuation of the personal property of the parties.

■ Douglas argues that the superior court erred in valuing the personal property as of June 30, 1991 when it had concluded that the parties separated as of September 1991.

With his trial brief filed in February 1995, Douglas included a schedule of the value of the couple's personal property, which they had divided when they separated. In the schedule Douglas valued the property as of June 30, 1991. In a similar schedule Tahni submitted, she adopted, with a few exceptions, the values Douglas apparently had provided. The court did not explicitly state the date it used for valuing the personal property. However, the court noted: "No independent evidence was given to the court as to the fair market value of the used property. The only evidence presented was the respective opinions of both parties as to the estimated value of the personal property." Thus, it is apparent that many of the values used by the court originated from Douglas's estimates of the value as of June 30, 1991.

■ In *Ogard v. Ogard,* 808 P.2d 815, 819 (Alaska 1991), we explained that "[o]rdinarily ... the date of valuation, which may be distinct from the date employed to distinguish marital from post-marital property, should be as close as practicable to the date of trial." *See also Rodriguez v. Rodriguez,* 908 P.2d 1007, 1012 (Alaska 1995) (property valued as of trial date); *McDaniel v. McDaniel,* 829 P.2d 303, 306–07 (Alaska 1992) (trial court provided no findings supporting decision to value property at date of separation rather than date of trial). We continued:

> As noted, there may be special situations in which the date of separation is more appropriate. Where, for example, "one of the spouses dissipates assets or deliberately allows their value to decline following separation, or the value of marital property increases due to the efforts of one of the spouses," use of the separation date may be warranted. In that event, there should be specific findings as to why the date of separation is the more appropriate choice for valuation.

*Ogard,* 808 P.2d at 820 (quoting L. Golden, *Equitable Distribution of Property* § 7.02 at 208 (1983)).

There is no evidence that the property has been deliberately dissipated by or has accreted through the effort of one of the parties, yet the superior court gave no specific reasons for departing from the general rule of valuing the assets as of the date of trial. Nonetheless, a persuasive argument has been made for affirming its determination.

■ The superior court never stated that it was valuing the property as of June 30. The only evidence Douglas presented to the court was the June 30 property values. "[This court has] previously held that it is the duty of the parties, not the court, to ensure that all necessary evidence is before the court in divorce proceedings and that a party who fails to present sufficient evidence may not later challenge the adequacy of the evidence on appeal." *Root v. Root,* 851 P.2d 67, 69 (Alaska 1993); *see also Hartland v. Hartland,* 777 P.2d 636, 640 (Alaska 1989) (party who failed to present sufficient evidence at trial could not challenge adequacy of evidence on appeal). Having failed to offer evidence of value at any date other than June 30, no basis exists for challenging the superior court's valuation determination.

#### 5. The superior court erroneously failed to consider Douglas's post-separation payments on the marital debt.

■ During the marriage Douglas and Tahni borrowed money from both Douglas's and Tahni's parents. At the time of the separation, the outstanding balance on the debt was approximately $15,600. At the time

order dividing equally between the parties the retirement benefits earned between October 1, 1981, and September 1, 1991. As a corollary to his argument that the court incorrectly found the date of separation to be September 1991, Douglas argues that the court improperly allocated

these retirement benefits. Since we conclude that the court's determination of the date of separation was not in error and that Tahni is otherwise entitled to these benefits, we affirm this aspect of the superior court's findings.

of trial, the outstanding balance on the debt was approximately $13,000. The superior court allocated the entire $13,000 debt to Douglas and gave him credit for the same amount in dividing the marital estate. Douglas argues that the court erred by not giving him credit for the approximately $2,600 in payments he made from post-separation income.

In *Cox,* we observed:

This court has required that trial courts consider payments made to maintain marital property from post-separation income when dividing marital property. The fact that one party has made payments from non-marital income to preserve marital property should be considered as one of the circumstances to be weighed by the trial court in dividing the marital property.

*Cox,* 882 P.2d at 919 (citations and internal quotations omitted). The court's findings show no consideration of Douglas's preservation of the marital estate by reduction of the marital debt with post-separation income. On remand, the superior court should consider whether Douglas should be given credit for the contributions he made from separate property in order to preserve marital property. *See Ramsey v. Ramsey,* 834 P.2d 807 (Alaska 1992) (holding no fixed rule requiring credit in all cases should be imposed).

B. *The Superior Court Must Clarify the Character of the Wasilla Property Which It Invaded in Order to Provide Alimony for Tahni.*

 The superior court made the following findings with regard to the Wasilla property and Tahni's request for alimony:

12. A parcel [of] real property located in Wasilla, Alaska, was purchased by Douglas approximately one year before the marriage. Payments have been made on that property using marital funds during the ten years of the marriage, and Douglas has continued to make payments since separation. The court finds, after considering the disparate earning capability between these two parties, their necessities, and the contributions during the marriage, that all of the current equity in the Wasilla proper-

ty is before the court for division. That is a total amount of $33,800.

. . . .

14. Douglas has a long history of being ... employed. He is currently in relatively good health and is capable of self-support.

15. Tahni has a history of employment during the marriage, she has some marketable skills and is able to type from 50 to 60 words per minute. Her work experience includes working in a one-person office, management of that office, taking care of the reception and secretarial needs of that office. She also has work experience as a long-distance telephone operator. Her earning capability, based on her work history, ranges from $10 to $15 per hour. She is not now currently employed. She has not been employed since the date of the separation. Prior to that date, she actually ceased being employed upon the birth of her children.

16. Tahni has petitioned the court for alimony for a period of time. . . .

17. In determining whether alimony is just and necessary, this court is obligated to consider the circumstances and assess the needs of the requesting spouse. This court, based on the limited marital estate of this case and the employment history of both parties, finds that the most appropriate way to deal with a request for alimony is to consider all of the property of the parties, including the $33,800 equity in Douglas' premarital property in Wasilla.

18. In determining the most equitable distribution of the marital estate this court has considered the respective ages of the parties, their earning ability, the duration and conduct of each during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances including the time and manner of acquisition of the property, its value at the time and its income producing capacity.

The superior court divided the equity in the Wasilla property equally between the parties.

Douglas argues that the superior court concluded that the Wasilla property was his premarital property, and that the court erred in invading that property and awarding half of the equity in it to Tahni.

■ The court is vested with broad discretion in making alimony determinations. *Faro v. Faro,* 579 P.2d 1377, 1380 (Alaska 1978). Where there is no abuse of that discretion, we will not interfere. *Id.*

■ There is ample support in Alaska law for an invasion of separate property in order to do equity in divorce proceedings.

> The court must determine what marital property is available for distribution, value that property, and make an equitable division if possible. If an equitable division is not possible, the court turns to the parties' separate property. At that point, the court is addressing the question of whether the balance of the equities between the parties requires that the property be invaded. If invasion is required, the court should determine what separate property the parties own, value it, and adjust the initial distribution as needed.

*Chotiner v. Chotiner,* 829 P.2d 829, 831 (Alaska 1992); *see also Morris v. Morris,* 908 P.2d 425, 428 n. 2 (Alaska 1995) ("[W]e have repeatedly stated a preference for property division over alimony."). The factors the superior court listed as having considered in its Finding 18 are the very factors this court has instructed superior courts to consider in making equitable divisions of marital property and alimony determinations. *See Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 4 (Alaska 1962). In addition, we have held that "[w]hen a couple has sufficient assets, the spouse with the smaller earning capacity can and should receive a larger share in the property distribution to aid him or her in this transition." *Dixon v. Dixon,* 747 P.2d 1169, 1173 (Alaska 1987).

However, the status of the Wasilla property is not clear. Although at one point the court describes the Wasilla property as Douglas's premarital property, it also noted that payments were made on the property using marital funds, and concluded that "all of the current equity in the Wasilla property is before the court for division." It is well established in Alaska that "[a]n asset that is originally premarital may be treated as marital for purposes of distribution if the parties, by their actions during the marriage, demonstrated an intent to treat the asset as a joint holding." *Rhodes v. Rhodes,* 867 P.2d 802, 804 (Alaska 1994). On remand the court must clarify the status of the property and the parties' rights to the equity in it.[3]

### C. *The Superior Court Did Not Err in Its Award of Attorney's Fees.*

■ The superior court awarded Tahni $2,500 for her attorney's fees on the basis of "the disparate economic situation of both parties" and "the superior earning capability that Douglas has [and] the resources he has at hand." Douglas argues that the award of attorney's fees was error.

■ Alaska Statute 25.24.140(a)(1) provides that a court may award one spouse "attorney fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend the action." Whether to make such an award is a decision within the sound discretion of the court. *H.P.A. v. S.C.A.,* 704 P.2d 205, 212 (Alaska 1985). Furthermore, in a divorce action the "prevailing party" standard of Alaska Civil Procedure Rule 82 does not apply. *Id.* Instead, the court should consider the parties' relative economic situations and earning powers. *Id.; see also Kowalski v. Kowalski,* 806 P.2d 1368, 1372 (Alaska 1991).

Even allowing for the superior court's erroneous characterization of Tahni's work history, her economic situation and earning capability are clearly inferior to Douglas's. The attorney's fees award was not an abuse of discretion.

---

**3.** The court's finding, in Finding 15, that Tahni has not been employed since the date of separation is clearly erroneous. Tahni testified that she has held two jobs, for a total of approximately eighteen months, since the separation. If on remand the Wasilla property is found to be marital, the issue of Tahni's post-separation employment is irrelevant. However, if it finds the property to be separate, it must consider the extent to which its mistaken finding on Tahni's work history affected its disposition of the Wasilla property.

## III. CONCLUSION

The judgment of the superior court is RE-VERSED and the case is REMANDED for an allocation of the value of the Papoose Twins property, a clarification of the findings with regard to the Wasilla property, and any necessary adjustments to the distribution resulting from these issues and the court's treatment of the reduction of the marital debt.