Rodney J. MATTFIELD, Appellant,

v.

Tamara M. MATTFIELD, Appellee.

No. S–11435.

Supreme Court of Alaska.

April 21, 2006.

---

24. *Id.*

27. *Sengupta,* 21 P.3d at 1249.

 

William T. Ford, Law Offices of William T. Ford, Anchorage, for Appellant.

Kristine A. Schmidt, Kenai, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

BRYNER, Chief Justice.

## I. INTRODUCTION

This appeal raises two separate points arising from a divorce between Rodney Mattfield and Tamara Mattfield. In both points, Rodney challenges rulings by the superior court granting motions for reconsideration filed by Tamara. The first point involves the superior court's decision to reconsider an order disbursing to the IRS funds derived from a dissolved family business; the second involves the court's decision to reconsider a child support order using estimated income in favor of an order based on actual earnings. We dismiss Rodney's appeal on the first point because the challenged order requires further proceedings, so it fails to qualify as an appealable final judgment. We affirm the court's rulings on the second point, the child support issue, concluding that Rodney has failed to establish any reversible error.

## II. FACTS AND PROCEEDINGS

Rodney Mattfield and Tamara Mattfield (now Cooke) married in 1988 and had two children together before Rodney filed for divorce in 1996. The following year the superior court entered a divorce decree but reserved all other disputed issues for further proceedings. Since then the parties have engaged in ongoing disputes over child custody, child support, and property division.

In the early 2000s two unrelated controversies arose: one involved Dash Express, Inc., a family-owned business; the other involved Rodney's child support obligation. Proceedings on these issues converged in December 2003 and culminated two months later in the superior court order that triggered this appeal.

### A. Dash Express

Rodney and Tamara incorporated Dash Express, Inc., as a marital business in 1988. Tamara managed the company, and Rodney worked there about four hours a day. During the first several years after the parties separated, an interim order gave Rodney control over Dash Express but required him

to pay Tamara $500 per month, subject to adjustment in the final property division.

In January 2000 the superior court entered its decision dividing the marital property. The court found that Tamara was "more likely to successfully operate and maintain Dash Express as a successful business," so it gave her the option to purchase Rodney's share of the company; alternatively, the court decided, Tamara could elect to assign her interest to Rodney on condition that he execute a promissory note and pay certain corporate obligations. Tamara initially chose to take over the business, but several days after notifying the court of her decision, she filed a motion to change her election. Her motion alleged that, before handing over Dash Express to Tamara, Rodney ran up the company's debts, withdrew funds from its accounts, and left the business insolvent.

In May 2000, after holding a hearing on Tamara's motion, the superior court found that Rodney had misrepresented Dash Express's financial position and acted in bad faith when he conveyed the business to Tamara. Based on these findings, the court ordered Rodney to retake control of the company and assume liability for its debts. The court also ordered both parties to surrender any Dash Express funds they received so that the money could be kept on deposit until the court decided how it should be distributed. The parties eventually deposited $7,758 in the court registry, asserting conflicting claims to the funds. Rodney argued that the funds should be used to satisfy Dash Express's outstanding debts, including payroll taxes; Tamara argued that at least some of the funds should be used to reimburse her for costs she incurred on behalf of Dash Express before Rodney resumed control of the company.

The status of the Dash Express funds remained unchanged over most of the next two years. In April 2002 the IRS filed a levy against the funds for payroll taxes totaling $15,511.69. The superior court set a hearing in early May 2002 to determine how to dispose of the funds; after the hearing, the court ordered further briefing. Progress then stalled until December 22, 2003—nearly twenty months after the May 2002 hearing—

when the superior court entered an order requiring all the deposited funds to be paid to the IRS.

## B. Child Support

During the first few years after they separated in 1996, Rodney and Tamara frequently changed their arrangements for custody and visitation with their children; issues of child support remained unresolved. The superior court repeatedly ordered both parties to submit current child support affidavits and financial records; Tamara generally complied with these orders; Rodney consistently failed to comply.

The superior court issued its custody decision in December 1999 but declined to resolve the issue of child support. Instead, the court again ordered the parties to submit current child support affidavits and financial records, deferring its ruling on support until the information became available.

For about two years after the superior court issued this order, the parties' custody arrangements remained unsettled, and the question of child support remained unresolved. The custody situation began to stabilize in late 2001. On November 21, 2001, the superior court entered a modification order giving the parties shared custody of their older child and awarding Tamara primary custody of their younger child. Again the order left child support unresolved, directing the parties to submit current affidavits, and intending to rule on the issue once the information was filed. Tamara complied with the order for new information; Rodney did not. The court took no action on the issue, and another year passed.

In November 2002 Tamara filed a motion to establish Rodney's support obligation for the past year—from the court's November 21, 2001, modification order through the date of her motion. Asserting that Rodney had "consistently attempted to avoid having his child support obligation established by the Court," Tamara asked that the court refer the issue to the Child Support Enforcement Division (CSED) because, in Tamara's view, CSED had "better resources to obtain financial information and set child support, in

dealing with intransigent obligors." Rodney opposed Tamara's motion, arguing that the court was better equipped than CSED to determine ongoing custody issues, and also suggesting that income should be imputed to Tamara over the period in question because she had taken leave from her job to have a child with her new husband.[1]

The superior court granted Tamara's motion and referred the question of child support to CSED, specifically directing the agency to establish support for the period in question "using the parties' actual net incomes during that period." But CSED did not calculate support on the basis of actual earnings, and instead submitted a proposed order using estimated earnings. Explaining that its statutory obligation was confined to establishing administrative support for cases that were not being handled in court, the agency insisted that "it is simply not possible for CSED to become involved in every [court] case."

Tamara objected to CSED's proposed order because it failed to use actual income, as the court had directed. The court implicitly agreed with Tamara's objection: It disregarded CSED's calculations and instead directed the parties to file supplemental information within twenty days reflecting their current incomes. Specifically, the court requested child support guidelines affidavits for the years 2001 and 2002, complete 2001 and 2002 federal income tax returns, and financial records showing total income from all sources for both years.

The superior court's order for supplemental information was issued on April 28, 2003. Tamara complied with the order; Rodney did not. On November 18, 2003, six months after Rodney's information was originally due, the superior court issued a sua sponte order requiring him to appear and show cause why he should not be held in contempt for disregarding its April 28 order. Rodney appeared in response to the order on December 22, 2003; after hearing arguments from

the parties, the court declined to find that Rodney had willfully disobeyed its April 28 order, but directed him to comply by filing the required information within twenty days. At the end of the hearing, Rodney's attorney evidently gave Tamara's attorney copies of the required information.

By the end of the December 22 contempt hearing, then, everyone—including the judge—seems to have expected that the court would resolve the child support issue soon, using Rodney's soon-to-be submitted information disclosing his actual income. And nobody seems to have known, or even suspected, that a different child support order had just recently been issued—an order at odds with these expectations. What seems to have happened was this: On November 26, 2003, about a week after ordering Rodney to appear at the contempt hearing, the superior court signed, apparently by oversight, the child support order based on estimated income that CSED had proposed ten months before. For unexplained reasons, moreover, the November 26 child support order remained undelivered for about three weeks; then, on December 19, just three days before the contempt hearing, it was faxed to the offices of the parties' attorneys. Based on their conduct at the December 22 contempt hearing, it seems that neither attorney had yet seen the November 26 order; and the superior court certainly showed no sign that it recalled having signed such an order.[2]

To recap, then, as matters stood on December 22, 2003, the superior court had just entered three orders—two dealing with child support and one concerning Dash Express: (1) The December 22 order concerning child support, entered on-record at the contempt hearing, directing Rodney to produce supplemental financial information so that the court could establish his child support obligation based on his actual earnings; (2) the November 26 child support order—proposed ten

---

1. Rodney also filed a child support affidavit but supported it with only a single pay stub, which simply reflected his 2002 wages from his primary employer.

2. If the court had recalled the order and had deliberately issued it, then the court would have had no reason to proceed with the show-cause hearing or to require Rodney to produce additional information concerning his actual 2001–2002 income.

months before by CSED and distributed on December 19—which, as of December 22, apparently remained undiscovered by the parties and unknown to the court; and (3) the December 22 order, not yet distributed, requiring Dash Express funds held by the court to be paid out to the IRS. These three orders soon triggered two motions for reconsideration, unleashing a flurry of overlapping pleadings and orders, which in turn ended two months later in the order that produced this appeal.

## C. Disputed Rulings on Reconsideration

Shortly after the December 22 contempt hearing Tamara apparently received the November 26 child support order. She moved for reconsideration on December 31, 2003, asking the court to vacate that order because it used estimated income instead of actual income, as the court had required. Tamara pointed out that the court itself had effectively rejected the same order in April 2003, when it chose to require the parties to file additional information to establish their actual incomes. She alternatively argued that the court had implicitly overruled the November 26 child support order at the December 22 contempt hearing by renewing its earlier order requiring Rodney to submit information establishing his actual earnings. Besides asking the court to vacate its November 26 child support order, Tamara's motion for reconsideration asked the court to enter a new support order based on Rodney's actual income as disclosed by the records he had recently turned over to Tamara. Tamara supported this request by submitting a new child support affidavit and a proposed child support order incorporating Rodney's new information.

On January 5, 2004, Tamara filed her second motion for reconsideration, this time asking the court to vacate its December 22 order directing that the Dash Express funds be disbursed from the court's registry to the IRS. Tamara insisted that she had sought to claim some of these funds when she deposited them in the registry two years before the

IRS filed its levy. Thus, Tamara complained, the court's order unfairly gave the IRS priority over claims that she and other creditors had tried to make first. Under Alaska law, Tamara argued, the court should have made the funds available to all Dash Express creditors with legitimate claims— not just the one creditor that levied them first.

Also on January 5, the superior court issued an order addressing Tamara's first motion for reconsideration—the motion asking the court to vacate its November 26 child support order. The January 5 order stated that Tamara's motion for reconsideration was granted, and directed Rodney to file an opposition to the motion by January 17. By granting reconsideration and directing Rodney to respond to the motion, the order effectively declared that the trial court intended to reexamine its November 26 order on the merits—not that the court actually had granted Tamara's requested relief.

On January 14, three days before his response would fall due, Rodney moved for an extension of time until February 6 "to respond to pending paperwork." Although the divorce case was pending before the superior court in Kenai, Rodney's attorney mistakenly filed the motion with the superior court in Anchorage, where his law office was located. The court system in Anchorage forwarded the document to Kenai several days later, and the Kenai court staff received it on January 20, three days after the deadline for Rodney's response.

That same day, the superior court judge handling the case in Kenai, evidently unaware of Rodney's motion to extend the time for opposition, signed an order granting Tamara's (apparently unopposed) motion to reconsider and vacate its November 26 child support order; at the same time, the court approved Tamara's request to enter her newly proposed child support order, which relied on the parties' actual 2001–2002 earnings.[3]

On January 28, 2004, the court granted Tamara's motion to reconsider its Dash Express order as well, thus reopening the issue

---

**3.** On February 9, 2004, CSED filed a Notice of Adjustment reflecting Rodney's increased sup-

port obligation under the newly entered child support order.

of whether the company's funds should go exclusively to the IRS. The court directed Tamara to inform all Dash Express creditors of its order and to invite them to file claims against the funds in the court's registry, together with statements indicating what priority they believed their claims should receive.

By February 2, Rodney's originally misfiled January 14 motion for extension had threaded its way through the court system and captured the assigned judge's attention; the court belatedly granted the motion. ' This extension gave Rodney until February 6 to file responses on "any pending matters" that he desired to address when he filed the motion on January 14.

On the February 6 deadline for responding, Rodney filed an emergency motion for additional time. Asserting that the orders on reconsideration relating to child support and Dash Express should be vacated, Rodney asked for another extension to address these issues until February 20. Instead of deciding Rodney's motion immediately as an emergency matter, the court allowed the usual time for a response before taking the matter under advisement. Rodney submitted no response by his requested February 20 deadline, and failed to request any additional extension. After another week passed with no further pleadings from Rodney, the court entered an order on February 27 denying his motion for an extension from February 6 to February 20.

Until the superior court issued its February 27 order denying Rodney's last request for an extension, earlier orders granting Tamara's motions to reconsider the November 26 child support order and the December Dash Express order had been functionally suspended pending consideration of Rodney's responses; in effect, then, the February 27 order denying any further extension reinstated and confirmed the court's orders on

reconsideration. Rodney now appeals, challenging the Dash Express order, which reopens the issue of who should receive the Dash Express funds, and seeking to vacate the new support order, which adopts Tamara's support calculations reflecting the parties' actual earnings. We consider each of these points in turn.

## III. DISCUSSION

### A. Dash Express

Rodney argues that we should vacate the order on reconsideration concerning the Dash Express funds and reinstate the superior court's December 22, 2003, order disbursing those funds to the IRS. He maintains that the superior court erred by neglecting to allow him to respond to Tamara's motion to reconsider the December 22 order and by failing to explain its basis for reconsidering its original order directing the funds to be paid to the IRS.

Tamara responds initially that these issues are not ripe for appeal. Only final judgments can be appealed as of right, she points out.[4] Because the superior court's reconsideration order concerning the Dash Express funds calls for further proceedings to determine who should receive the company's money, Tamara contends that the order cannot properly be treated as an appealable final judgment.

 Tamara's argument is well taken.[5] "A 'final' judgment is one that disposes of the entire case and ends the litigation on the merits."[6] Here, far from deciding who should obtain the deposited Dash Express funds, the order on reconsideration reopened that issue and specifically required further proceedings. As Rodney himself acknowledges, "[i]t is uncertain whether the effect of the granting of Tamara's motion for reconsideration vacated the previous order or merely stayed its application pending possible further proceedings. It seems more like-

---

4. *D.L.M. v. M.W.*, 941 P.2d 900, 902 (Alaska 1997) (citing Appellate Rule 202(a)).

5. The appealability of an order presents a jurisdictional question that we review de novo. *See Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1030 (Alaska 1972), *overruled on other grounds by City & Borough of*

*Juneau v. Thibodeau*, 595 P.2d 626, 628–29 (Alaska 1979).

6. *D.L.M.*, 941 P.2d at 902 (quoting *Borg–Warner Corp. v. Avco Corp.*, 850 P.2d 628, 634 (Alaska 1993) (citations omitted)).

ly that the latter effect was intended by the court's order." Rodney further concedes that "[t]he matter remains unresolved and at this writing the funds are still in the court registry."

Rodney nonetheless contends that the Dash Express issue needs to be aired immediately because, he asserts, Tamara has ignored the trial court's order directing her to notify other Dash Express creditors of the order so that they can submit claims. Since no other creditors have filed claims, Rodney alleges, no hearing on the matter will ever be held, so the disputed order will never become a final appealable judgment. According to Rodney, Tamara should not be allowed to profit from her own lack of compliance by defeating his right to appellate review.

But this argument is unpersuasive. If, as Rodney alleges, Tamara is flouting the superior court's notification order, then the proper recourse would be for Rodney to ask the superior court to enforce its order by compelling Tamara to obey it. Tamara's alleged disobedience does not entitle Rodney to abandon available trial court remedies and jump courts by demanding review of an otherwise non-appealable order.

Since Rodney's claims of error concerning Dash Express address a matter that has not been finally resolved by the superior court, we conclude that no final judgment has been entered, so Rodney's appeal on this point must be dismissed as premature.

### B. Child Support

■ Rodney also challenges the superior court's decision to reconsider its November 26, 2003, child support order. He argues that the court should not have reconsidered

the order without first allowing him to file an opposition to Tamara's motion for reconsideration; he also argues that the court improperly relied on new evidence in adopting the new child support order and did not adequately explain its reasoning. But as Tamara correctly responds, Rodney's arguments lack merit.[7]

■ As already noted above, because the superior court was actively seeking to enforce its order requiring Rodney to submit information to establish a child support order based on his actual earnings, it appears to have made an oversight in signing its November 26 child support order, which used CSED's estimated income calculations. Moreover, even though the court's January 5 order nominally granted Tamara's motion to reconsider its November 26 child support order, the order on reconsideration did not, as Rodney alleges, deprive him of an opportunity to respond to Tamara's motion. To the contrary, the January 5 order expressly invited Rodney to respond to Tamara's motion, thus effectively indicating that the trial court intended to reexamine its November 26 order—not that it had actually vacated that order as Tamara requested.

This reading of the trial court's order follows logically because the order substantially tracked the requirements of Civil Rule 77(k)(3), which specifies that the trial court should ordinarily invite a response before granting a motion for reconsideration: "No response shall be made to a motion for reconsideration unless requested by the court, but a motion for reconsideration will ordinarily not be granted in the absence of such a request."[8] When viewed in context, the superior court's January 5 order can most rea-

---

7. In addition to responding to Rodney's arguments on their merits, Tamara contends as an initial matter that Rodney's appeal on this point should be dismissed because he filed it too late. The final order denying Rodney's extension to file responses to Tamara's motions for reconsideration was issued February 27, 2004, and was distributed on March 3. As noted in our discussion in the text of this opinion, this order functionally resolved all pending child support issues and amounted to a final judgment; hence the thirty-day period for appeal began running when the order was distributed. See Alaska R.App. P. 204(a)(1). Because Rodney filed his notice of appeal on April 7, the notice was filed several

days after the specified deadline. But given the brief period of delay, the general confusion surrounding the proceedings on reconsideration, the uncertainty that might have arisen because the order denying Rodney's extension was not expressly identified as a final judgment, and the lack of any discernible prejudice to Tamara, we conclude that dismissing Rodney's appeal might result in manifest injustice, and therefore choose to relax the deadline and address the appeal on its merits. See Alaska R.App. P. 521.

8. Alaska R. Civ. P. 77(k)(3).

sonably be understood as an attempt to comply with this rule's command.

■ Rodney also argues that the trial court improperly considered new evidence in granting Tamara's request to substitute her proposed child support order for the November 26 order. But this argument lacks merit for a similar reason: By expressly inviting Rodney to respond to Tamara's motion for reconsideration, and then extending the deadline for his response, the superior court gave Rodney ample opportunity to controvert the new information Tamara submitted to bolster her newly proposed child support order. And although the court ultimately denied Rodney's motion for yet another extension, it did so only after his requested extended deadline had passed without any response or further request for extension. Nor did Rodney move for reconsideration or offer to file a late response after the court denied his last extension. Even now, on appeal, Rodney advances no plausible explanation for his failure to submit a response by his own requested February 20 deadline.[9]

■ Rodney further asserts that the superior court failed to enter proper findings and conclusions explaining its reasons for granting Tamara's proposed child support order. But this argument is simply mistaken. The child support order itself amply explains the basis of the trial court's decision: the order follows Alaska's standard form DR–301 "Order for Modification of Child Support," providing the detailed information that DR–301 requires and performing all necessary calculations on the basis of that information, in keeping with the requirements of Civil Rule 90.3. In turn, the amounts reflected in the order correspond to the detailed affidavits submitted by Tamara, which reflect the financial information that Rodney gave Tamara at or soon after the December 22 contempt hearing. Rodney does not challenge the accuracy of the information used by the court. Nor does he allege that the court's order contains errors in calculation. When viewed as a whole, then, these documents fully explain the superior court's child support order.

■ Moreover, even assuming that Rodney did show that the trial court committed procedural error, the error would be harmless at most. The only claim of prejudice advanced on appeal by Rodney is that the superior court should have imputed income to Tamara because she became "voluntarily unemployed" during the period in question by taking maternity leave to have a new child with her current spouse. But Rodney's argument misreads Rule 90.3(a)(4). The rule allows income to be imputed only when a parent "voluntarily *and unreasonably* is unemployed or underemployed."[10] Here, Rodney's argument completely ignores the requirement of unreasonableness. Rodney relies solely on the contention that Tamara voluntarily took maternity leave, providing no further reason and citing no authority suggesting that her temporary time off to

---

9. Rodney does assert on appeal that procedural confusion and misunderstandings with his attorney accounted for his inability to comply with earlier deadlines; but he does not claim that these same difficulties prevented him from meeting his requested February 20 deadline or excused him from at least asking for another extension by that date. To the extent that Rodney's briefing might suggest that it would have been futile to file a response or seek another extension on or after his requested February 20 deadline, his suggestion lacks any discernible basis in the record; as of February 20, Rodney's motion for extension was still under advisement, and we see nothing in the record suggesting that the trial court would inevitably have denied the motion had Rodney submitted a response by that day. Nor do we see any reason to assume that the court would necessarily have denied a timely motion for a further extension if the motion were supported by a showing of good cause. Because the superior court waited until February 27 to deny Rodney's motion to extend the response time until February 20, and because Rodney had filed nothing further by then, its order of denial suggests that the court simply considered the motion to be moot.

10. Alaska R. Civ. P. 90.3(a)(4) (emphasis added). *See, e.g., Silvan v. Alcina,* 105 P.3d 117, 119–20, 125 (Alaska 2005) (upholding a finding by the superior court that Silvan was "voluntarily and unreasonably unemployed" and that income should be imputed to her, which in turn reduced the child support due her); *Beaudoin v. Beaudoin,* 24 P.3d 523, 530 (Alaska 2001); Alaska R. Civ. P. 90.3 cmt. III.C. *Cf. Thomas v. Thomas,* 248 N.J.Super. 33, 589 A.2d 1372, 1373 (Ch.Div. 1991) (noting that acting as a care giver to two young children is a form of employment, even if it is not compensated monetarily).

have a child should automatically result in imputed income. On this record, we see no basis for concluding that the trial court's ruling substantially prejudiced Rodney.

## IV. CONCLUSION

Because the order Rodney challenges on the Dash Express issue is not a final judgment, we DISMISS Rodney's appeal on that point. Because we find no reversible error in connection with the superior court's orders granting Tamara's motion to reconsider the November 26 child support order and to enter a different order, we AFFIRM those orders.