**Douglas Wayne BROTHERTON, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT SERVICES DIVISION ex rel. Tahni BROTHERTON, Appellee.**

No. S–12588.

Supreme Court of Alaska.

March 6, 2009.

**61.** *Hutka v. Sisters of Providence in Wash.,* 102    P.3d 947, 959 (Alaska 2004).

Douglas Brotherton, pro se, Anchorage, Appellant.

Leroy K. Latta, Jr., Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, CARPENETI,
and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Douglas Brotherton appeals the superior court's November 2006 modification of Tahni Brotherton's child support obligation. He argues that the superior court erred in excluding from its calculation of Tahni's income her share of the divided marital real property. He also contends that Tahni's income did not justify the reduction in child support, that she was capable of earning more than she reported, and that the reduction represents an improper variance from Alaska Civil Rule 90.3. We conclude that the superior court properly excluded from its calculation of Tahni's income the value of Tahni's share of the divided marital real property. But the trial court's calculation of income should have included the portion of post-judgment interest attributable on a pro rata basis to 2006. We remand the case to the superior court for additional findings on Tahni's 2006 income.

## II. FACTS AND PROCEEDINGS

Douglas and Tahni Brotherton married in 1981 and have two sons, born in 1988 and 1990. Tahni was initially awarded primary physical custody of the boys after the couple's 1995 divorce, but Douglas gained full custody in November 2004. After this shift, Tahni requested a variance from her Rule 90.3 child support obligation, claiming that her gross income was below the poverty line and that her obligation should be set at the $50 per month minimum or "manifest injustice would result." She also requested that the court average her income over several years to determine her child support obligation. The superior court was unpersuaded by Tahni's arguments, and in March 2005 it set Tahni's child support obligation at $426.67 per month for both boys.

Douglas's relationship with the children became strained and on October 16, 2005, Douglas sent them to stay with their mater-

nal uncle and his wife, Douglas Warner and Pamela Neiswanger (the Warners), "to cool off for a couple of months." Tahni's child support obligation to Douglas, paid through the Child Support Services Division (CSSD), continued, but Douglas paid the Warners $500 per month for boarding the boys. Tahni also made a one-time $500 payment to the Warners in October 2005. In December 2005 Tahni paid off her child support arrears to Douglas through CSSD. The Warners then sent a letter to Douglas requesting that he forward them the $426.67 per month he was receiving in child support from Tahni through CSSD, retroactive to November 2005, in addition to his $500 per month direct payments. Douglas refused and retrieved the boys from the Warner household on March 18, 2006.

The return to Douglas's household had a particularly deleterious effect on the younger son, whose emotional health suffered over the years of his parents' protracted custody and child support battles. Dr. David Sperbeck, a psychiatrist who evaluated both boys, noted that the younger boy had contemplated suicide several times and that he "stated that he would rather die" than continue to experience the conflict between his parents. In accordance with the child's wishes, the Warners moved to intervene and take custody of the younger son in April 2006.[1] In a June 2006 stipulated order the parties agreed that custody of the child would be transferred to the Warners until further order of the court, and that Douglas and the Warners would engage in mediation to consider long-term custody.

After a settlement conference, the parties stipulated to an award of custody of the younger boy to the Warners. The stipulation, which was entered as an order by the superior court on September 11, 2006, provided that Douglas would continue to pay the Warners $500 per month and that Douglas would instruct CSSD to direct half of Tahni's monthly child support payment to the Warners. Although the stipulated order varied from the standard child support procedures directed by Civil Rule 90.3 for third-party

1. At that point, the older son was two months    away from turning eighteen.

custody of fewer than all the children, it was deemed necessary due to the unusual circumstances of the case.

Several months earlier, in June 2006, Tahni had contacted CSSD and requested that the March 2005 order be modified to decrease her child support obligation. She included her 2006 child support guidelines affidavit, a schedule detailing her 2006 income estimate, her 2005 tax return, and pay stubs from her three 2006 employers. Her June estimate of gross income for 2006 was $20,000. In September she supplemented her affidavit, decreasing her 2006 gross income estimate to $16,000 based on the loss of her job. CSSD reviewed the information provided by Tahni, and in October it calculated her obligation to be $294 per month for both children, retroactive to July 1, 2006, and filed a motion to decrease Tahni's child support obligation to that amount.

Also in October 2006 Tahni filed with the superior court a notice that Douglas had paid her in full for her share of the marital real property divided in their 1995 divorce (the Wasilla property), after resolution of all litigation on appeal and remand.[2] Douglas had been ordered to pay $15,600 plus interest at 10.5 percent per annum, effective from the date of the divorce decree, April 18, 1995, until the date of payment, to compensate Tahni for her share. On October 16, 2006, he paid $34,417.50, which included $18,817.50 in post-judgment interest.[3]

The court granted CSSD's motion to decrease Tahni's obligation to $294 per month. But due to "mailing irregularities," Douglas did not receive CSSD's motion to modify and reduce Tahni's child support obligation until after the court had granted it. On November 14, 2006, the day after the superior court's order modifying support, Douglas requested an extension of time to file an opposition to the modification motion. The court granted that request on November 17, but after Douglas informed the court of the ser-

vice problem with the original motion and requested clarification in light of the fact that the modification had already been granted, the court ruled that Douglas's responsive filing would actually be considered as a motion for reconsideration.

In his motion for reconsideration, Douglas agreed that Tahni's child support obligation should be modified but contended that it should be increased, not reduced. He proposed that she pay $847 per month, a figure that reflected his belief that Tahni was capable of earning a gross income of $28,862.40 per year and his view that his payment for her share of the Wasilla property should be included in the calculation of Tahni's 2006 income. Douglas did not request a hearing on this motion.

In its response to Douglas's motion for reconsideration, CSSD emphasized that it had no financial interest in the matter and did not represent either party. CSSD maintained that its calculation of Tahni's child support obligation was correct, while acknowledging that the figure was based on information provided by Tahni, including her sworn child support guidelines affidavit. CSSD noted in particular Tahni's "poor employment history," which was marked by "frequent discharges for unsatisfactory performance." Addressing Douglas's argument that the payment compensating Tahni for her share of the Wasilla property should be included in her Rule 90.3 income, CSSD stated that such an interpretation of Rule 90.3's definition of income "may be too broad." Tahni also opposed reconsideration. Douglas replied, contending that CSSD's reliance on information provided by Tahni was improper because she had not included the payment for her share of the divided marital real property in her income and claiming that she had not accurately reported her wages.

On January 4, 2007, the superior court denied Douglas's motion for reconsideration

2. The parties appeared before us three times on appeal regarding their marital property division. *See Brotherton v. Brotherton*, 142 P.3d 1187 (Alaska 2006); *Brotherton v. Brotherton*, Mem. Op. & J. No. 957, 2000 WL 34545647 (Alaska, March 1, 2000); *Brotherton v. Brotherton*, 941 P.2d 1241 (Alaska 1997).

3. Although judgment was not entered until August 7, 2006, we use the term "post-judgment interest" to describe all interest accruing on the principal from the date of the divorce decree, April 18, 1995.

without comment. Douglas then moved again for reconsideration, expanding on his earlier arguments—that Tahni was capable of earning more than she had reported and that she had improperly excluded the payment for her share of the Wasilla property from her income. The superior court again denied reconsideration, without comment, on January 31.

Douglas appeals the November 13, 2006 order reducing Tahni's child support obligation.[4] Douglas argues that (1) Tahni was capable of maintaining a higher income than she had reported in her request for a modification and her income did not justify the reduction in support; (2) the court failed to make specific findings to support its decision to reduce Tahni's child support obligation; (3) the payment for Tahni's share of the divided marital real property, including the post-judgment interest, should have been included in Tahni's income; and (4) the reduction was an improper variance from Rule 90.3.

## III. STANDARD OF REVIEW

Modifications of child support orders are reviewed for abuse of discretion.[5] We will find an abuse of discretion only when we are left with a definite and firm conviction that a mistake has been made based on the record as a whole.[6] Factual findings will not be set aside unless they are clearly erroneous.[7]

Whether a financial benefit qualifies as income for the purposes of Rule 90.3 is a question of law requiring de novo review.[8] Under such review we adopt the rule that "is most persuasive in light of precedent, reason, and policy."[9]

## IV. DISCUSSION

### A. Further Factual Findings Are Required To Ascertain Whether Tahni's 2006 Income Supported a Reduction in Her Child Support Obligation.

Douglas argues that Tahni was capable of maintaining an income to support the pre-modification level of child support and that her income level did not warrant a reduction in her child support obligation. CSSD responds that the superior court had broad discretion to evaluate Tahni's financial situation and that the superior court's finding that a modification was warranted was not clearly erroneous.

The superior court based its reduction of Tahni's child support obligation on a projected gross income estimate of $16,000 for 2006.[10] In her child support guidelines affidavit, Tahni explained that this figure was based on the approximately $12,000 that she made between January 2006 and July 2006, plus a "liberal estimate of $4,000" for July through December. But the validity of this second, estimated figure is not apparent from the record. In 2005 Tahni had a gross income of $24,801.55. Deducting the $3,604 of unemployment benefits she collected that year, she still generated approximately $21,200 through her employment in 2005. In 2006 she made approximately $12,000 in seven months, which over the course of a year would have totaled approximately $20,570—about the same amount she made through work in 2005. Tahni's estimate of $4,000 in earnings for the last five months of 2006 is problematic, even in light of the loss of her position as a medical coding auditor, since a job paying the minimum wage would generate more than $4,000 of income in five months. In light of these issues, and be-

---

**4.** Douglas does not appeal the September 2006 stipulated order granting custody of the younger son to the Warners and the child support arrangements detailed therein.

**5.** *Robinson v. Robinson,* 961 P.2d 1000, 1002 (Alaska 1998).

**6.** *Id.*

**7.** *Olmstead v. Ziegler,* 42 P.3d 1102, 1104 (Alaska 2002).

**8.** *Robinson,* 961 P.2d at 1002.

**9.** *Id.*

**10.** Although the superior court did not make explicit findings about Tahni's 2006 income, it implicitly accepted the $16,000 figure by adopting CSSD's recommendation of $294 per month for two children, which was based on a projected gross income of $16,000 for 2006.

cause the superior court did not make precise findings regarding Tahni's 2006 income,[11] we cannot determine whether the superior court erred in reducing Tahni's child support obligation. We remand for further factual findings to ascertain whether Tahni's 2006 income warranted the reduction.[12]

**B. Although the Superior Court Did Not Err in Excluding the Payment for Tahni's Share of the Divided Marital Real Property from Her Income for Rule 90.3 Child Support Calculation Purposes, It Should Have Included the Portion of Post–Judgment Interest Attributable to 2006.**

When the superior court adopted CSSD's calculation of Tahni's child support obligation, it excluded from its calculation the $34,417.50 payment that Tahni received from Douglas in October 2006 for her share of the Wasilla property, divided under the terms of their 1995 divorce. Douglas argues that both the property value itself and the post-judgment interest paid should have been included in Tahni's income for purposes of calculating her Rule 90.3 child support obligation.

**1. Tahni's share of the divided marital real property**

■ Tahni's share of the marital real property divided under the 1995 divorce decree amounted to $15,600. Douglas contends that the payment she received for this prop-

erty should count as income under Rule 90.3. CSSD disagrees.

Douglas recognizes that "Part III of the Commentary to Civil Rule 90.3 does not specifically list property settlement payments as income" and that we have concluded in the past that property settlements do not represent income for child support purposes. In *Kiel v. Alexander*, we held that a $10,000 payment from an ex-husband to his former wife for her interest in a piece of real property "[c]learly . . . represent[ed] a property settlement and [was] therefore not income" for Rule 90.3 purposes.[13] Other courts have adopted this principle as well. For instance, in *Kyle v. Kyle*[14] an Indiana appellate court considered an argument similar to the one Douglas makes. There, the ex-husband was ordered to pay his ex-wife $100 per month for her share of the equity in the marital home.[15] The ex-husband contended that the lower court erred in excluding this payment from his ex-wife's income for child support calculation purposes.[16] The *Kyle* court affirmed the exclusion, concluding that marital property distributions do not count as income in that regard:

> The $100.00 per month is a property settlement payment. It is not maintenance and is not properly included in the definition of gross income for the purposes of calculating child support. . . . The trial court could have required Richard to pay the [total equity amount] immediately after the divorce. . . . We do not believe the terms of the property distribution should impact an

**11.** CSSD argues that the superior court's factual findings were adequate and cites *Mattfield v. Mattfield*, 133 P.3d 667, 675 (Alaska 2006), a case in which we held that a standard DR–301 order for modification of child support form, as was used by the superior court in this case, provided sufficiently detailed findings to support the superior court's child support order. But *Mattfield* is inapposite because there the appellant neither "challenge[d] the accuracy of the information used by the court" nor "allege[d] that the court's order contain[ed] errors in calculation." *Id.* Here, Douglas has consistently argued that the superior court "overlooked or misconceived the material facts regarding [Tahni's] income" in granting the reduction.

**12.** The superior court stated in its order modifying child support that application of the Rule

90.3 formula would be unjust because "this is a divided custody case with a third-party custodian that is a variance from the requirements of Civil Rule 90.3(i) as specified in [the] order dated September 11, 2006." If, on remand, the superior court's ordered child support represents a variance from the Rule 90.3 formula, specific findings explaining that variance will also be necessary. *See* Alaska R. Civ. P. 90.3(c)(1).

**13.** Mem. Op. & J. No. 1144, 2003 WL 22320611, at *7 (Alaska, October 8, 2003).

**14.** 582 N.E.2d 842 (Ind.App.1991).

**15.** *Id.* at 844.

**16.** *Id.* at 846.

order of child support.[17]

Although Douglas recognizes that "there have been previous court opinions exempting property settlements from income," he contends that "this concept should be evaluated on a case-by-case basis." He argues that because Rule 90.3's definition of income "coincides (with very few exceptions) with the IRS's definition of income" and because there may be "circumstances which disqualify the $15,600 payment from being excluded from income" under Internal Revenue Code rules, we should follow the Internal Revenue Code and count the settlement as income under Rule 90.3 as well.[18]

But Douglas fails to cite any authority to support his dubious position. There is no dispute that the payment for Tahni's share of the marital real property was made pursuant to the 1995 divorce order. Even if Douglas could find authority to support his position, we have recognized in the past that the Rule 90.3 definition of income may differ from the Internal Revenue Code's definition of income.[19] The superior court properly excluded the payment representing Tahni's share of the marital property from her income in calculating her child support obligation under Rule 90.3.

### 2. Post-judgment interest on Tahni's share of the divided marital real property

■ Douglas also argues that the $18,817.50 in post-judgment interest on Tahni's share of the divided marital property should have been included in Tahni's Rule 90.3 income. As Douglas points out, the commentary to Rule 90.3 does include "interest and dividends" as income.[20] But to include in Tahni's 2006 income the entire amount of interest she received—which represented interest accrued not just in 2006 but over approximately eleven years [21]—would paint a distorted picture of Tahni's 2006 income. We have in the past employed income averaging to ensure a fair assessment when an obligor's income has fluctuated.[22] Thus, the trial court should only deem the portion of the total post-judgment interest payment by Douglas to Tahni attributable to 2006 as income earned in 2006.[23]

■ This approach is consistent with the goals of post-judgment interest. Had Tahni been timely paid her judgment, she could

---

17. *Id.* at 847.

18. Douglas implicitly relies on Internal Revenue Code § 1041, which governs transfers of property incident to divorce. See 26 U.S.C. § 1041 (2000). That code section provides the general rule that transfers of property between spouses incident to divorce are treated for tax purposes as gifts rather than income, and that no gain or loss will be recognized on the transfer. *Id.* § 1041(a)-(b). The Treasury regulation implementing this code section, however, provides that if a transfer is not made within one year after the date the marriage ceases, it must be made within six years of the date the marriage ceases *and* be pursuant to a divorce order or the general rule is not applicable. *See* 26 C.F.R. § 1.1041–1T(b), Q & A(6)-(7) (2008). This regulation provides that transfers made even after the six-year period may still qualify for the general tax treatment upon a specific showing that the transfer was made in connection with a divorce-related property division and that sufficient justification exists for the delayed transfer. *See id.* at Q & A(7). Douglas claims that because he did not actually pay Tahni for her 1995 property transfer to him until 2006, well after six years of the date the marriage ceased, the general rule does not apply and we should recognize the payment as income.

19. *See, e.g., Osmar v. Mahan,* 53 P.3d 149, 151 n. 11 (Alaska 2002) (*"Although the Internal Revenue Code's definition of 'income' differs from Rule 90.3's definition in other respects,* it is noteworthy that federal income tax law also excludes child support from income." (emphasis added)).

20. Alaska R. Civ. P. 90.3 cmt. III.A ("Income includes, but is not limited to ... interest and dividends[.]").

21. Douglas was ordered to pay $15,600 plus interest from the date of the divorce decree, April 18, 1995, until the date of payment. He actually paid that amount on October 16, 2006.

22. *Keturi v. Keturi,* 84 P.3d 408, 413 (Alaska 2004) ("[W]e have held in a number of cases that income-averaging may be used to calculate a non-custodial parent's income where it has been erratic in the past."); *see also* Alaska R. Civ. P. 90.3 cmt III.E.

23. Douglas's post-judgment obligation accrued for 138 months before payment, nine and one-half of which were in 2006.

have invested the money and generated interest on it.[24] That interest would have counted as Rule 90.3 income. But importantly, only the interest accruing in 2006 would have counted as income to her in that year. Therefore, only the portion of interest attributable to 2006 should be counted as income to Tahni in 2006. The superior court erred in not including this fraction of the total interest in its calculation of Tahni's 2006 income and the corresponding child support obligation for that year.

On remand, the court should include the proportionate share of interest attributable to 2006 as income to Tahni for calculation of her 2006 child support obligation. Because this interest is non-recurring, it should not be counted for support after 2006.[25] We also note that the portion of the post-judgment interest that is included in Tahni's 2006 income should be reduced by Tahni's federal income tax liability for that portion.[26]

## V. CONCLUSION

The superior court properly excluded from Tahni's Rule 90.3 income her share of the divided marital real property. But the portion of post-judgment interest that accrued on it in 2006 must be included in Tahni's 2006 Rule 90.3 income, and we REMAND for calculation of that amount. Because the $16,000 income estimate for 2006 used to calculate Tahni's child support obligation has not been explained, we REMAND for additional factual findings to determine whether Tahni's 2006 income warranted a reduction in her child support obligation.

WINFREE, Justice, dissenting in part.

I respectfully disagree with the court's ultimate resolution of Tahni's October 16, 2006, receipt of $18,817.50 in post-judgment interest. The court acknowledges Douglas's argument that the interest is income that should be included in the Rule 90.3(a) calculation of Tahni's 2006 income, and further acknowledges that the receipt of interest generally is income for Rule 90.3 purposes. The court appropriately expresses a legitimate concern that including the entire amount of the interest "would paint a distorted picture of Tahni's 2006 income." But in attempting to allay its concern, the court goes astray by creating a new rule of law that abridges the trial court's discretion to calculate an appropriate child support award.[1]

Although true that the question of "whether an item qualifies as income for the purposes of Rule 90.3 is a question of law,"[2] calculating income for future child support payments is a matter within the trial court's discretion. The commentary to Rule 90.3 observes:

> Child support is calculated as a certain percentage of the income which will be earned when the support is to be paid. This determination will necessarily be somewhat speculative because the relevant

---

24. In fact, this scenario demonstrates the rationale behind awarding pre- and post-judgment interest. *See, e.g., Ogard v. Ogard*, 808 P.2d 815, 817–18 (Alaska 1991) (recognizing that such awards are meant "to compensate the successful party for lost use of the money and [to] prevent unjust enrichment of the unsuccessful party who had the money"). A related purpose is "to eliminate the incentives to litigate a case or prolong a judgment." *Morris v. Morris*, 724 P.2d 527, 529 (Alaska 1986). We note that this purpose is also served in the case at bar. *See Brotherton v. Brotherton*, 142 P.3d 1187, 1191 (Alaska 2006) ("[I]t is undisputed that Douglas vigorously appealed the award of one-half of the equity in the Wasilla property until all avenues of appeal were exhausted."). To treat all of the interest as though it was earned in 2006 would allow the payor to manipulate the child support calculation.

25. In defining income, Rule 90.3 generally contemplates an income stream rather than non-recurring payments. For instance, it excludes one-time gifts and inheritances, but includes recurring payments such as salary, royalties, and dividends. Alaska R. Civ. P. 90.3 & cmt III.A.

26. *See Shepherd v. Haralovich*, 170 P.3d 643, 650 (Alaska 2007) ("[F]ederal income tax is to be deducted from a parent's gross income in order to determine the parent's adjusted annual income [under Rule 90.3].").

1. *See Keturi v. Keturi*, 84 P.3d 408, 412 (Alaska 2004) ("We will not overturn a child support award unless the trial court abused its discretion in calculating the award.").

2. *Robinson v. Robinson*, 961 P.2d 1000, 1002 (Alaska 1998).

income figure is expected future income. The court must examine all available evidence to make the best possible calculation.[3]

In my view the court should allow the superior court the opportunity on remand to consider all evidence of Tahni's 2006 and future income, including but not limited to Douglas's one-time payment of long-accrued interest, and to exercise its discretion in fashioning an appropriate child support award for 2006 onward.

Tahni has asked the superior court to lower her child support obligation, and a modification of a child support obligation is within the discretion of the superior court. The superior court certainly is capable of: (1) recognizing the income distortion created by Douglas's one-time payment of the entire eleven and one-half years of post-judgment interest; (2) exercising its authority and discretion to apply income-averaging to this non-recurring source of income in its calculations, if appropriate;[4] and (3) recognizing and exercising its discretion to vary the child support award under the Rule 90.3(a) formula to avoid manifest injustice, if good cause to do so exists.[5] After examining all evidence of Tahni's income for 2006 and beyond, the superior court may determine that some, all, or none of the interest payment should be taken into account in the Rule 90.3(a) calculations or that a variation from those calculations is warranted under Rule 90.3(c).

Instead the court fashions a new rule on what constitutes income for purposes of Rule 90.3. The court holds as a matter of law that when a non-recurring payment of accrued interest is received in a given year, only the amount of interest that actually accrued in that year is income for Rule 90.3(a) calculations. The rule is inappropriate because it cannot reasonably fit all facts and circumstances and may encourage manipulation of the timing for receipts of income. If Douglas had paid Tahni on January 1, 2006, as a matter of law only one day's interest would be income for Rule 90.3(a). In other situations the party receiving interest income might cause it to be received January 1 to ensure that virtually all of it is not treated as Rule 90.3 income, which may not be fair to either the custodial parent or the affected children. The rule is also unnecessary because, at least until today, the superior court had the authority to evaluate unusual receipts of income and take them into account along with all other relevant facts and circumstances, and then had broad discretion to determine an appropriate child support award.[6]

If the court is concerned that Douglas unfairly attempted to skew Tahni's income in his favor after she moved for modification of her support obligation, the proper response is not to tie the lower courts' hands in all cases with a new rule of law fashioned for this particular case. Instead, it is to allow the superior court to exercise its sound discretion by making the best possible calculation of Tahni's income going forward in light of all available evidence.

---

3. Alaska R. Civ. P. 90.3, Commentary III.E, 232 (2008). "The commentary to Civil Rule 90.3 has not been officially adopted, but it can provide useful guidance in applying the rule." *Miller v. Clough*, 165 P.3d 594, 600 n. 10 (Alaska 2007) (citing *Caldwell v. State*, 105 P.3d 570, 573 n. 6 (Alaska 2005)).

4. *See Keturi* 84 P.3d at 413 (noting our holdings that income-averaging may be used to deal with erratic income).

5. *See* Alaska R. Civ. P. 90.3(c)(1).

6. *Keturi*, 84 P.3d at 412.